.JOHN H. STARIN, Respondent, *v.* FRANKLIN EDSON et al., Commissioners, etc., et al., Appellants.

Under the New York City Consolidation Act (§§ 170, 180, chap. 410, Laws of 1882), the commissioners of the sinking fund when about to lease "the franchise of a ferry" are authorized to lease along with the franchise wharves or piers used or required for the purposes of the ferry, such lease to be "in the manner provided by law," *i. e.,* (§ 170) "for the highest marketable price or rental at public auction or by sealed bids." The wharf or pier is to be leased along with the ferry franchise as part thereof, the whole to be put up as one entire piece of property.

The city has power to include in one leasing or sale two ferry franchises with the wharves or piers used in connection therewith ; it is a matter in the discretion of the commissioners, and in the absence of evidence showing an abuse of that discretion this court may not interfere.

Said commissioners advertised for sale, for a term of years, two ferry franchises, together with the right to occupy and use certain wharf property used for the purposes of said ferries. The terms of sale provided that the franchises would be offered "at an upset price of five per cent on gross receipts from ferriage of each of said ferries, and a yearly fixed rental of ten thousand dollars for the wharf property." *Held,* that a sale made on the conditions and in the manner stated in the advertised terms of sale was proper and valid ; and that a bid of $15,000 for the wharf, and a less percentage on the gross receipts than that offered by the successful bidder, was properly rejected.

*It seems* the same conclusion would be reached if the provision requiring the lease to be made "in the manner required by law" should be construed to mean in the manner prescribed by the section of said act (§ 716) requiring that all leases (with certain exceptions not material) "shall be made at public auction to the highest bidder."

*In re Merriam* (84 N. Y. 596) distinguished.

The successful bidder was a railroad corporation. In an action brought by a taxpayer, under the act of 1881, "for the protection of taxpayers" (Chap. 531, Laws of 1881), to set aside the lease, *held,* that, conceding the action was maintainable under said act, plaintiff could not raise the question as to the lack of power of said corporation to make the contract.

As a general rule no private citizen has the power to question, by legal proceedings, the action of a corporation, as being *ultra vires,* where he has no interest except that of any other citizen.

*It seems,* in such case, the People, through their attorney-general, are the proper parties to present that question.

*It seems*, also, that, in an action by the city to recover rent, the fact that the railroad corporation had no legal right to enter into the contract would be no defense.

*Starin* v. *Mayor, etc.* (42 Hun, 549) reversed.

(Argued December 19, 1888; decided January 15, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 31, 1886, which reversed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term, and which directed judgment for plaintiff. (Reported below, 42 Hun, 549.)

This action was brought by plaintiff, as a taxpayer of New York city, under the act chapter 531, Laws of 1881, to set aside as illegal a lease made by the commissioners of the sinking fund of two ferry franchises and the accompanying wharf.

The facts, so far as material, are stated in the opinion.

*David J. Dean* for the Mayor, etc., appellant.    The plaintiff is not entitled to maintain the action, as it does not appear that it was brought in good faith, and it has not been shown that any injury to the corporation will ensue, or has ensued. (*Mayor, etc.*, v. *Starin*, 106 N. Y. 1; Laws of 1881, chap. 531; *Roosevelt* v. *Edson*, 51 Super. Ct. 238; *Webb* v. *Mayor, etc.*, 64 How. Pr. 10; *Latham* v. *Richards*, 12 Hun, 360; *Bird* v. *Mayor, etc.*, 33 id. 396; *Warren* v. *Baldwin*, 35 id. 334; *Hills* v. *Peekskill Savings Bank*, 26 id. 161; *Metzger* v. *A. & A. R. R. Co.*, 79 N. Y. 171; *Hull* v. *Ely*, 2 Abb. N. C. 440; *Kimball* v. *Hewitt*, 17 St. Rep. 743; *Fuller* v. *Edson*, Daily Reg. July 11, 1884; *Ayers* v. *Lawrence*, 59 N. Y. 296.)    The method chosen for the auction was legal, fair and reasonable. (*Harlem Gas Light Co.* v. *Mayor, etc.*, 33 N. Y. 309; *Brady* v. *Mayor, etc.*, 20 id. 312; *People* v. *Mayor, etc.*, 32 Barb. 102; *Wood* v. *Beech*, 56 How. Pr. 470; *Bigler* v. *Mayor, etc.*, 5 Abb. N. C. 51.)    The commissioners of the sinking fund were not legally bound to sell the wharf at public auction. (Laws of 1882, chap. 410, §§ 170, 180, 716; *People* v. *Van*

*Nort,* 64 Barb. 205 ; *Baird* v. *Mayor, etc.,* 96 N. Y. 567 ; *Kingsley* v. *Brooklyn,* 5 Abb. N. C. 1 ; *Bigler* v. *Mayor, etc.,* Id. 61 ; *Greene* v. *Mayor, etc.,* 60 N. Y. 303 ; *Leverich* v. *Mayor, etc.,* 66 Barb. 623 ; *Smith* v. *Mayor, etc.,* 21 How. Pr. 1 ; *In re Dugro,* 50 N. Y. 513 ; *H. G. L. Co.* v. *Mayor, etc.,* 33 id. 309 ; *People* v. *Flagg,* 17 id. 587 ; *Detwiler* v. *Mayor, etc.,* 46 How. 218 ; *People* v. *Van Nort,* 65 Barb. 331 ; *Hart* v. *Mayor, etc.,* 95 N. Y. 443.)

*W. W. Mac Farland* for S. I. R. T. R. R. Co., appellant. The sale was not illegal. (Laws of 1882, chap. 410, §§ 170, 180, 716.) If this was not a case of illegality and the sinking fund commissioners were acting within the orbit of their powers, the question as to what mode of leasing would be most advantageous to the city addressed itself to their judgment, not to the plaintiff's nor to that of any other citizen. (*Ayres* v. *Lawrence,* 59 N. Y. 192 ; *Bird* v. *Mayor, etc.,* 33 Hun, 396 ; *Hills* v. *Peekskill Sav. Bk.,* 26 id. 161 ; *Metzger* v. *A., etc., R. R. Co.,* 79 N. Y. 171 ; *Latham* v. *Richards,* 12 Hun, 360.) So far as the statute under which the action was brought relates to the jurisdiction of equity it merely gave to that jurisdiction a new subject-matter which at once came under the dominion of all the rules and doctrines of equity. (*Bangs* v. *Duckenfield,* 18 N. Y. 596 ; *In re Canal and Water Streets,* 2 Kernan, 406.) Equity will never enforce the technical right of one party when it would involve serious wrong and injury to the other party. (*Moore* v. *Appleby,* 108 N. Y. 237.) The case is undisguisedly fraudulent and is not brought to protect a taxpayer's interests, but to promote a speculator's. (*Hull* v. *Ely,* 2 Abb. N. C. 440.)

*James McNamee* for respondent. The plaintiff is qualified to maintain this suit. (Chap. 531, Laws of 1881, 709 ; 1 R. S. [7th ed.] 865 ; *Roosevelt* v. *Draper,* 23 N. Y. 318 ; *Ayers* v. *Lawrence,* 59 id. 192, 196 ; *Webb* v. *Mayor, etc.,* 64 How. Pr. 10 ; *Metzger* v. *A. & A. R. R. Co.,* 79 N. Y. 171 ; *Hills* v. *Peekskill Savings Bk.,* 26 Hun, 161 ; *Warrin* v. *Baldwin,*

105 N. Y. 534.)    The lease in question was illegally made. (*Mayor, etc.,* v. *N. S. S. I. F. Co.,* 55 How. Pr. 154 ; 9 Hun, 620 ; *Mayor, etc.,* v. *N. F. Co.,* 55 How. Pr. 138.)    The restriction of the bidding on the wharf was contrary to statute.    (*In re Merriam,* 84 N. Y. 596, 602 ; *Brady* v. *Mayor, etc.,* 20 id. 312, 316, 318, 319 ; *In re Mahan,* 20 Hun, 301 ; 81 N. Y. 621 ; *In re Man. Sav. Inst.,* 82 id. 143.)    The lease was illegal because the Staten Island Rapid Transit Railroad Company had no power to contract to operate a ferry from New York city to Bay Ridge on Long Island, and it is contrary to public policy to permit the assumption of such unnecessary power.    (*Pratt* v. *H. R. R. R. Co.,* 21 N. Y. 305 ; Laws of 1884, chap. 193, 223 ; *Lowry* v. *Inman,* 46 N. Y. 125 ; *Sturgis* v. *Drew,* 11 Hun, 139 ; *Bissell* v. *M. S. & N. I R. R. Co.,* 22 N. Y. 285 ; *M. A. B. Church* v. *O. S. B. Church,* 73 id. 90 ; *O. & L. C. R. R. Co.* v. *V. & C. R. R. Co.,* 6 T. & C. 488 ; Rev. Ord. of 1880, §§ 39, 78.)

PECKHAM, J.    We shall assume that there is nothing in the record which in any way precludes the plaintiff from maintaining this action, provided it could be maintained by any taxpayer under the act chapter 531 of the Laws of 1881, entitled " An act for the protection of taxpayers."    We therefore proceed to consider the grounds upon which the plaintiff bases his right to maintain this action.    The property which the defendants, the commissioners of the sinking fund, advertised to be sold, was described in such advertisement as " the franchises of operating the ferries from the city of New York to Staten Island and to Bay Ridge, Long Island, as established by the common council, November 3, 1875, and June 4, 1877, respectively, for the term of eight years and eleven months, from June 1, 1884, * * * together with the right to occupy and use the wharf property now occupied and used for ferry purposes at the foot of Whitehall street by the ferry to the west shore of Staten Island."

One of the principal objections by the plaintiff is in regard

to the manner in which the sale of the franchises was conducted by the defendants, the commissioners of the sinking fund. In the advertisement of the proposed sale the commissioners stated that "the franchises would be offered at an upset price of five per cent of the gross receipts from ferriage of each of said ferries, and a yearly fixed rental of ten thousand dollars for the wharf property, to be paid in addition to the percentage of gross receipts from ferriage."

The objection that was made as to this point, was that the rental for the wharf property should have been fixed alone by the price for which the purchaser would be willing to take it at an auction sale, and as the objection was disregarded and the lease sold on the advertised conditions and in the manner therein stated, it is claimed that it was illegally made and that it is void.

A brief examination of the statutes relating to the sale or leasing of such property will, we think, show that the claim is not well founded. By the consolidation act, known as chapter 410 of the Laws of 1882, and which is entitled "An act to consolidate into one act and to declare the special and local laws affecting public interests in the city of New York," various departments of the city government are recognized and the duties of each one pointed out. Chapter 6 of that act treats of the department of finance, and title 4 of such chapter treats of the sinking fund as a part of the finance department. Section 170 of the act, which is the first section of title 4, treats of the board of commissioners of the sinking fund and confirms in such board all its then existing powers. Power is also given in that section (170) to such commissioners to sell or lease for the highest marketable price or rental, at public auction or by sealed bids  *  *  *  any city property, except wharves and piers. By section 180 of the same act, and which is part of the same title (4) the commissioners of the sinking fund possess the power and they are authorized to lease *in the manner provided by law*, along with the franchise of the ferry, within said city, such wharf property, including wharves, piers, bulk-heads and structures thereon, and slips,

docks and water fronts adjacent thereto, used or required for the purposes of such ferry now owned or possessed or which may be hereafter owned or acquired by the city.

It is claimed that the expression in section 180 as to the leasing of the wharves " in the manner provided by law," contemplates the existence of some legal restraint upon this power, and that such restraint is found in the provision contained in section 716 of the act in question, which states that " all leases other than for districts appropriated by said department to special commercial interests shall be made at public auction to the highest bidder." Assuming the applicability of this provision, it is claimed that the practice pursued by the commissioners is in violation thereof, and so the sale is void. We think that this provision does not apply to the case of a leasing by the commissioners of the sinking fund.

It will be noticed that the provision is found in chapter 15 of the consolidation act which treats of the department of docks, and the leases spoken of in the section are leases to be made by that department, and provision is made for the condition and terms of such leases and the manner in which they shall be sold. The effect of the two sections (170, 180) upon the powers of the commissioners of the sinking fund is to place in their hands the right generally to sell or lease for the highest marketable price or rental at public auction or by sealed bids, any city property whatever, excluding wharves or piers; excepting that wharves or piers used or required for the purposes of a ferry, the right to run which the commissioners are about to lease, may be leased " along with the franchise to run such ferry," and such lease must be in the manner provided by law. The manner provided by law in reference to such a lease, is the law which governs the commissioners of the sinking fund in their selling or leasing city property, and that law is found in section 170 of the act in question. Taking their powers from those two sections (170, 180), the commissioners are invested with power to make a lease of the ferry franchise and, along with it and as part of it, a lease of the wharf or pier required for the purpose of using the ferry franchise and the

whole subject of the lease is, in substance, one entire thing, a ferry franchise and a place to land, without which the franchise of the ferry would be comparatively worthless. This whole piece of property (franchise and wharf) must be leased for the highest marketable rental at public auction or by sealed bids, according to the mandate of section 170. Construing the language of section 180 to mean that the wharf or pier is to be leased along with the ferry franchise as part thereof, and that the whole is to be put up as one entire piece of property, the leasing provided by law is to be a leasing of such property for the highest marketable rental at public auction.

If this be the true construction, then it is apparent that the sale was properly conducted. If the condition had been that the sale would be made of the franchise and the wharf to him who would bid the highest percentage upon the gross receipts, there could be no question, as it seems to us, that such condition would have been proper, and a sale under it to the highest bidder entirely legal. The fact that $10,000 is stated as an upset price for the wharf is but another means of stating that $10,000 and a certain percentage, etc., must be bid as an upset price for the whole property which is to be leased. To permit a mixing up of the two kinds of bids at the same auction for the sale of the same property, viz., a bid for a sum in gross, with a bid on percentages upon the gross receipts, would simply lead to an impossibility of conducting such a sale, for it would be impossible to state from among all the bids which was the highest, the one which was for the highest sum in gross, or the one which was for the highest percentage on the gross receipts.

The bid, therefore, which was made for $15,000 for the wharf, but for a less percentage on the gross receipts, was an attempt to mix up the two methods of bidding without the consent of the commissioners, and against the condition already prescribed by them. We do not see how it would be possible to make a bid for the franchise of the ferry and for the wharf by indicating the rental to be paid for the wharf, and the percentage on the earnings of the ferry to be paid

for its franchise, so long as the sale is to be made to the same individual, which is, without doubt, the case contemplated by the statute. If A bid $10,000 for the wharf, and ten per cent on the gross receipts for the ferry franchise, and B bid $15,000 for the wharf and five per cent on the gross receipts for the ferry franchise, which is the highest bidder for the whole property? Evidently no one can tell. But B is the highest bidder for the wharf property, and A for the ferry franchise, if they are separately considered, and hence the wharf would go to one and the ferry franchise to another. This was never meant. Hence the only solution is to say that no mixing can be permitted of those modes of bidding, and whichever is adopted must be exclusively adhered to.

The system itself of bidding on the gross receipts plan must, therefore, be condemned, or else this sale was valid if our construction of the statute be correct that the auction which is demanded is, in substance, an auction of the ferry franchise and the wharf as one inseparable piece of property.

We see nothing which renders such an auction illegal. In many instances it might be the fairest that could be adopted, and the best calculated to promote the interests of the city. It is a matter which lies within the fair discretion of the commissioners of the sinking fund, and there is no pretense in the evidence disclosed by this record of any abuse of discretion by them in making the sale in the manner they did. It may well be that they thought the method the best for the city, and it may be that it was so in fact.

I think that the same result is arrived at even if the expression in section 180, that the lease is to be made "in the manner provided by law," should be construed to mean in the manner provided in section 716. In such case the further language used in section 180, that the commissioners are to sell the wharf "along with the franchise of a ferry," must have due weight given to it, and in such event the wharf and the franchise would still constitute one subject-matter for a sale at auction to the highest bidder, and the reasoning already given would then result in a sale under the same con-

ditions, either for a sum in gross or for the highest sum bid upon the percentage system.

Considerable stress was laid in the argument of the learned counsel for the respondent, upon the decision of this court in *In re Merriam* (84 N. Y. 596), which case was thought to be controlling in his favor. We are unable to regard that case as working such result. Judged by the facts there existing, it was properly decided. The city fixed a certain price for the rock excavation and did not open it to public competition as the statute required. . There was nothing in the general nature of the work which prevented the rock excavation from being awarded to the lowest bidder therefor, and the other work to another who was the lowest bidder for it.

Here, as we hold, the subject-matter of the sale was the ferry franchise and the wharf in connection with it and as one entire thing, and the ferry franchise and the wharf were to be let to the same person. A sale by auction to the highest bidder, under the circumstances and in the manner already detailed, was, in substance and effect, a sale of each parcel and of the whole in strict accordance with the law.

In any view which we are able to take, we think the sale, so far as this question is concerned, was legal and valid.

Another ground of objection is that the Rapid Transit Company had no right to take a lease of the franchise for both ferries, as the one to Bay Ridge was outside of its corporate powers, and hence a lease to it of the Bay Ridge franchise was *ultra vires.*

This objection, of course, does not touch the question of the power of the city to include both in the conditions of sale (although the power to do so is denied and is one of the questions argued here), but is addressed simply to the power of the railroad corporation to bid for both. We think the city had power to include both, and that it was a question for the commissioners whether to do so or not; and in the absence of any evidence of abuse of that discretion, we cannot interfere, even conceding the existence of the power in case of such abuse.

Nor do we think that the plaintiff can raise the question as to the lack of power (if there be any) on the part of the railroad corporation to make the contract for a lease of both ferries. In general no private citizen has the power to question, by resort to legal proceedings, the action of a corporation as being *ultra vires*, where he has no other interest therein than any other citizen. The People, through their attorney-general, are the proper parties; and the attorney-general represents, in such case, the sovereignty which granted the charter.

A stockholder might, perhaps assail the acts of the corporation in such case on the ground that the directors thereof had illegally executed an assumed corporate power. (*Leslie* v. *Lorillard*, 110 N. Y. 519.) But we do not think that the act under which this suit is brought was ever intended to confer such a right upon a mere taxpayer. If the lease is executed the city could maintain an action against the corporation for the recovery of the rent, and it would be no defense to that action to say that the railroad corporation had no legal right to enter into such contract. Having entered into it as matter of fact, and being in possession under the lease and enjoying its privileges, it would be against justice and right to set up such lack of power when asked to pay the consideration it promised in return for the granting of such lease. This principle was decided in *Whitney Arms Company* v. *Barlow* (63 N. Y. 62), and has been followed in several cases in this court since that time, and is now the well-established doctrine in such cases.

In case the attorney-general, under the direction of the legislature, should bring an action to forfeit the charter of the corporation for the exercise of a privilege or franchise not conferred upon it by law, and the corporation should thereupon be dissolved, the lease would terminate and the city would resume the possession of the property. In a suit by a stockholder (if one would lie under such circumstances), the judgment, if in favor of the plaintiff, would annul the contract as to the future, but would not affect the right of the city to

recover for the past rent due by the terms of the lease. The act which grants leave to a taxpayer, as such, to bring an action of this nature does not include a ground such as is claimed here. We think the views of the learned justice who wrote at Special Term are correct and fully justify the judgment of dismissal of the complaint which he ordered.

The judgment of the General Term should, therefore, be reversed and that of the Special Term affirmed, with costs.

All concur.

Judgment accordingly.