THE CITY OF BUFFALO, Respondent, *v.* MARY B. BALCOM et al., Appellants.

Where pursuant to a city charter, property sold for unpaid taxes is, in default of bidders, struck off to the city, the rights acquired by the city may be sold by it, and it may sell to the original owner.

There is no rule of public policy requiring such a sale to be for cash and in the absence of any provision of the charter requiring it, the sale may be upon credit, with such security as in the exercise of good faith and good judgment, the common council may deem for the best interests of the city.

Where, therefore, the city of Buffalo, canceled certificates of sale so issued to it, on receipt of the owner's bond for the amount, secured by a mortgage on the lands sold, *held*, that the mortgage was valid.

*It seems*, that conceding the city had no legal capacity to take and enforce such a security, neither the mortgagor nor a devisee of the mortgaged premises, or a judgment creditor of the devisee may question its validity.

One who has had the full benefit of a contract with a municipality, which is *ultra vires*, will not be permitted, in an action upon it, to question its validity.

(Argued June 15, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of Buffalo, entered upon an order made November 29, 1886, which modified and affirmed as modified, a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Adelbert Moot*, for appellants.

*Philip A. Laing*, for respondent.

BROWN, J. This action was brought to foreclose a mortgage upon real estate in the city of Buffalo. Certain taxes which had been imposed by the plaintiff upon the lands of the mortgagor, Philo A. Balcom, remaining unpaid, said lands were sold, and at the sale in default of bidders struck off to

the city, and certificates of sale issued to it pursuant to the charter. The consideration of the mortgage and the bond accompanying it was the cancellation of such certificates.

The question presented is whether the mortgage is valid.

The appellant contends that as the purpose of the contract was to secure the payment of a tax it was not within the legal capacity of the city to take, hold and enforce such a security and that the contract as to the plaintiff is *ultra vires* and contrary to public policy.

Assuming all that the learned counsel has said upon the general policy of permitting a municipal corporation to accept anything but money in the payment of taxes, and the embarrassment which would follow from the general adoption of any other course I fail to see how the state by whose favor the municipality exists or the people who reside within the limits of the city have any interest in arresting the operation of the contract in suit and the recovery of the money equitably due upon it. If there has been in respect to this contract any wrong action on the part of the common council, any undue favor to the mortgagor, or any misappropriation of the funds of the city, the surest and most effectual way of righting the wrong done is to enforce the mortgage, and thus to the extent of the value of the security restore the money to the treasury of the city.

But the act of taking the bond and mortgage in suit was not illegal. There is no provision of law which forbids it.

The land mortgaged had been sold to pay the tax imposed upon it and, in default of bidders, was struck off to the city and it received and held the certificate of sale.

We may assume the proceedings in relation to the levy of the tax and the sale were in compliance with the charter, as if they were otherwise it rested with the appellants to show it. The certificate of sale after failure on the part of the owners to redeem was to be followed by a "declaration of sale," which the charter made evidence of the purchaser's title.

Whether the city at the time of taking the mortgage was

entitled to receive the "declaration of sale" and under it possession of the property is of no importance. The certificate itself was made assignable, and the only act requisite to obtain the declaration of sale was service on the owners of notice to redeem. Such rights as the city had in the property it could therefore sell, and in so doing there was nothing to prevent its dealing with the owners of the land. It could sell the certificate to any one and we are not referred to any provision of the charter which required it to sell for cash only, and certainly there is no rule of general policy which required it to do so. The general public interest was the only rule which was to guide the common council and in all other respects it could sell and convey the same as an individual. (*Brooklyn Park Comrs.* v. *Armstrong*, 45 N. Y. 234; *Kings Co. Ins. Co.* v. *Stevens*, 101 id. 411.)

The common council could, therefore, sell these certificates to the owner of the land and receive from him such security for the payment of the purchase price as in the exercise of good faith and good judgment it should deem for the best interests of the city. Such was in substance the transaction in this case. The certificates of sale were canceled and the land freed from the tax restored to the owner, and the city received the mortgage to secure the payment of that which was due to it. No one has assailed the good faith of the transaction, and no statute forbids it and, we think, the transaction was one within the power of the city and must be upheld. But assuming that the city had not the legal capacity to take and enforce such security that either from the general nature of the transaction or from the particular stage of the proceedings instituted to collect the tax it was an agreement beyond its power to make and enter into, still we are of the opinion that the appellant cannot question its validity.

The appellants are a devisee of the mortgaged property under the will of the mortgagor and a judgment creditor of the devisee. Both of them claim through the mortgagor, and their right to assail the validity of the transaction is such as he had and no more.

The effect of the mortgage was to extend the time within which Balcom could discharge the indebtedness arising from the imposition of the tax, and hence conferred a material benefit upon him, and that benefit he and the appellants have had and enjoyed, and the case is, therefore, a proper one .for the application of the rule that one who has had the full bene-fit of a contract cannot be permitted, in an action founded upon it, to question its validity. A court of equity is always reluctant to decree a forfeiture, and under circumstances such as are disclosed in this action, the plea of *ultra vires* does not address itself favorably to the mind of the court.

It has been said that this plea should not prevail when it would not promote justice, but on the contrary would accom-plish a wrong, and such clearly would be the result of its application in this case, as the mortgaged property would escape payment of its share of the tax, and the burden from which it would be relieved would fall upon the other taxable property in the city.

*Silver Lake Bank* v. *North* (4 John. Ch. 370) was an action to foreclose a mortgage. One of the defenses interposed was that the plaintiff, by its charter, was authorized to take mort-gages for debts previously contracted only, and that the mort-gage in suit was taken concurrently with the loan. With reference to this defense, Chancellor KENT held that the pro-hibition in the charter did not make void a mortgage given to secure the payment of money so lent, nor prevent the bank from enforcing such a mortgage, and if the corporation, in its business transactions, should pass the exact line of its power, it would rather belong to the government to exact a forfeiture of its charter than for the court to decide in a collateral way a question of misuser by setting aside a just and *bona fide* contract. The same rule has been applied by the Supreme Court of the United States in its decisions under the National Banking Act. (*Nat. Bank* v. *Matthews*, 98 U. S. 621; *Nat. Bank* v. *Whiting*, 103 id. 99.)

And under the statute of this state authorizing suits by tax-payers to prevent waste of the public funds, ample power

exists to restrain any abuse in this direction of municipal power.

The rule which denies to a party benefited by a contract the right to question its validity is founded upon estoppel, and that doctrine has been so frequently applied to defeat the plea of *ultra vires*, that there is no occasion now to attempt its further discussion, or state the reason for its application.

It has been carefully considered in the following cases : *Whitney Arms Co.* v. *Barlow* (63 N. Y. 62); *Rider Life Raft Co.* v. *Roach* (97 id. 378); *Starin* v. *Edson* (112 id. 206); *Mayor, etc.*, v. *Sonnebone* (113 id. 423); *Mayor, etc.*, v. *Huntington* (114 id. 631); *R. & B. R. R. Co.* v. *Proctor* (29 Vt. 93); *Davis* v. *Old Colony R. R. Co.* (131 Mass. 258), and this case falls within the rules there decided.

The judgment should be affirmed.

All concur.

Judgment affirmed.