(9 Misc. Rep. 610.)

WILKINS v. MAYOR, ETC., OF CITY OF NEW YORK et al.

(Common Pleas of New York City and County, Special Term.   September 19, 1894.)

1. MUNICIPAL CORPORATIONS—ACTION BY TAXPAYER—PARTIES.
   Laws 1892, c. 301, § 1, which authorizes a taxpayer to sue "all officers, agents, commissioners and other persons" acting for a municipal corporation, "to prevent any illegal act on the part of any such officer, agent, commissioner or other persons," does not authorize the joinder of the municipal corporation as a defendant.

2. SAME—CONTRACTS—ULTRA VIRES.
   Where a party has made permanent improvements on property leased from a city under a contract that the city would refund the value of the improvements on the termination of the lease, a plea that such contract was ultra vires is inequitable, and will not be allowed.

3. SAME—INJUNCTION.
   Where a lessee of a ferry from the city of New York improved the ferry property under an agreement that the city would refund the value of the improvements on the termination of the lease, it is within the administrative discretion of the commissioners charged with the making of such leases to state in the advertisement for the successive lease that the successful bidder will be required to pay the value of such improvements, and their action will not be interfered with by injunction.

Action by Peter Wilkins, as a taxpayer in the city of New York, against the mayor, aldermen, and commonalty of the city of New York, and Thomas F. Gilroy and others, composing a majority of the commissioners of the sinking fund, pursuant to the provisions of Laws 1892, c. 301, § 1, for injunctive relief against the contemplated sale of a ferry franchise and lease of wharf property, on the ground that such sale, if permitted, will involve the performance of an illegal official act on the part of defendants, and result in a waste of and injury to the property of the municipality. Plaintiff moves to have preliminary injunction continued pendente lite. Denied.

James A. Dennison, for plaintiff.

William H. Clark, Corp. Counsel (Charles Blandy and E. J. Freedman, of counsel), for defendant.

BISCHOFF, J. On the argument of this motion the plaintiff asked for leave to amend his complaint by adding thereto an allegation to the effect that within the year immediately preceding the commencement of the action he paid a tax upon an assessment exceeding $1,000. Such an amendment is allowed, and thus the objection that the moving papers fail to show that the plaintiff is qualified, under the provisions of section 1 of chapter 301 of the Laws of 1892, to maintain this action, is removed.

The action is brought to restrain the defendants from doing an act alleged to be in excess of authority, and threatening a waste of or injury to the property of the defendant municipal corporation, the mayor, etc. It is instituted pursuant to the provisions of the

sections of the act above referred to, which empower a taxpayer to prosecute and maintain an action against "all officers, agents, commissioners and other persons acting, or who have acted for and on behalf of any county, town, village or municipal corporation in this state, and each and every one of them, * * * to prevent any illegal official act on the part of any such officers, agents, commissioners or other persons, or to prevent waste or injury to, or to restore and make good, any property, funds or estate of such county, town, village or municipal corporation." The action is not authorized specifically against the county, town, village, or municipal corporation; and the "other persons" against whom it may be brought are defined to be those "acting or who have acted for and on behalf of any county, town, village or municipal corporation." The language of the statute referred to, therefore, ex proprio vigore, excludes the county, town, village, or municipal corporation as among the contemplated defendants. It does not appear that the plaintiff, either as a taxpayer or otherwise, will be specially damnified or affected by the acts sought to have restrained. Independently of statute authority, therefore, he is without a locus standi in this action, so far as it concerns the defendant municipal corporation, the mayor, etc., and aims to restrain or avoid the latter's corporate act. Roosevelt v. Draper, 23 N. Y. 318; Starin v. Edson, 112 N. Y. 206, 19 N. E. 670. As against the defendant the mayor, etc., then the plaintiff can in no event succeed in this action. Hence, for that reason, injunctive relief against the same defendant should be denied.

As against the remaining defendants, a majority of the board of commissioners of the sinking fund of the defendant municipal corporation, the action is maintainable only upon proof that they have done or are about to do some act the commission of which involves a waste of or injury to the corporate property, funds, or estate, or the performance of some illegal official act. Evidence of like circumstances is therefore requisite to authorize the restraint of their official acts by interlocutory injunction. No act which is free from fraud or collusion, and which involves only the exercise of administrative discretion on the part of a municipal officer, will or can be restrained. Talcott v. Buffalo, 125 N. Y. 280, 26 N. E. 263; Ziegler v. Chapin, 126 N. Y. 342, 27 N. E. 471. The defendants are not arraigned upon any accusation which impugns their personal or official integrity. What, then, are the facts on which the plaintiff predicates his claim to injunctive relief against the defendant sinking fund commissioners? In August, 1888, the Staten Island Rapid-Transit Company was the lessee from the mayor, etc., of the ferry plying between the city of New York, at the foot of Whitehall street, and Staten Island, under a lease of which there then remained about five years unexpired. On the 4th day of August, 1888, the mayor, etc., and the Staten Island Rapid-Transit Company entered into an agreement, in writing and under seal, whereby the latter corporation undertook to make extensive and valuable im-

provements, which were to be of a permanent character, and had been previously authorized by the board of commissioners of the sinking fund, upon the wharf property of the former, which was used in connection with the operation of the ferry franchise, and which improvements were designed to promote the convenience of the traveling public. By the same agreement it was, among other things, mutually covenanted that upon the expiration of the then existing lease of the ferry franchise and accompanying wharf property the mayor, etc., would pay, or cause to be paid, to the Staten Island Rapid-Transit Company, the value of the improvements, which was to be ascertained by arbitration in case of a disagreement respecting it, unless the Staten Island Rapid-Transit Company should, upon the next sale of the franchise and lease of the wharf property, succeed itself as purchaser and lessee, in which event, upon the expiration of the lease pursuant to such sale, as well as in case of the forfeiture of such lease by breach of its conditions, the improvements were to be and become the property of the mayor, etc., without any payment whatever therefor. A further provision of the agreement was to the effect that upon the next sale of the ferry franchise and lease of the accompanying wharf property the mayor, etc., would cause to be inserted among the terms of the sale a provision to the effect that, if the purchaser and lessee should be a person or persons other than the Staten Island Rapid-Transit Company, it would pay, or cause to be paid, to said transit company, the value of the improvements to the wharf property which were made by the latter pursuant to the said agreement of August 4, 1888. In 1893 the lease of the ferry franchise and wharf property existing at the time of the agreement of August 4, 1888, expired, and the value of the improvements made by the Staten Island Rapid-Transit Company was thereupon fixed by agreement, and without resort to arbitration, at $175,000, which sum was considerably less than cost. A notice of the sale on May 16, 1894, of the ferry franchise to the highest bidder above the upset annual sum of $22,500, with the lease of the accompanying wharf property at the annual rental of $21,500, was thereupon published by the defendants, acting as a majority of the board of commissioners of the sinking fund; and among the terms of sale specified in the notice was one pursuant to which a purchaser and lessee, if other than the Staten Island Rapid-Transit Company, was required to pay to the latter corporation the sum of $175,000 for its improvements, as a condition of his being let into possession. By the preliminary injunction granted herein the contemplated sale was suspended, and the plaintiff now asks to have it permanently enjoined. The particular objections to the sale, as proposed by the sinking fund commissioners, which the plaintiff urges in support of his claim to injunctive relief, are that because the covenant of the mayor, etc., in the agreement of August 4, 1888, to pay for the improvements to be made by the Staten Island Rapid-Transit Company, is ultra vires and unenforceable, the imposition of such payment as a condition of the sale

is wholly arbitrary and unauthorized; that the threatened exaction of such promise of payment from a purchaser and lessee other than the Staten Island Rapid-Transit Company operates as an unjust discrimination in favor of the last-mentioned corporation; and, hence, that the threatened exaction of the promise is destructive of that fair competition among intending purchasers and lessees which would redound to the benefit of the mayor, etc., in securing the greatest obtainable sum above the upset price.

I am unable, after careful consideration of all the facts, and of the brief submitted by the learned counsel for the plaintiff, to accede to the validity of the plaintiff's contentions. That the board of commissioners of the sinking fund of the defendant municipal corporation is authorized and lawfully charged with the duty to dispose of its ferry franchises to the highest bidder, and to let to the purchaser the wharf property connected with and necessary to its operation, is unquestionable. Starin v. Edson, 112 N. Y. 206, 19 N. E. 670. And, assuming that the agreement of August 4, 1888, was at its inception, and while it remained wholly executory, ultra vires, and therefore unenforceable against the municipality, because in excess of its lawful authority to incur an indebtedness, it remains that the agreement was fully performed on the part of the Staten Island Rapid-Transit Company, such performance in reliance upon the promise to indemnify the latter corporation having resulted in the defendant municipal corporation's gain of valuable improvements to its wharf property. Under such circumstances a plea of ultra vires must be regarded as inequitable, and would be unavailable to the defendant municipal corporation as a defense to the Staten Island Rapid-Transit Company's demand for payment of the value of its improvements. Arms Co. v. Barlow, 63 N. Y. 62; Life-Raft Co. v. Roach, 97 N. Y. 378; Starin v. Edson, 112 N. Y. 206, 19 N. E. 670; Mayor v. Sonneborn, 113 N. Y. 423, 21 N. E. 121; Mayor v. Huntington, 114 N. Y. 631, 21 N. E. 998; City of Buffalo v. Balcom, 134 N. Y. 532, 32 N. E. 7.

Regarding the defendant municipal corporation's obligation to indemnify the Staten Island Rapid-Transit Company to the extent of the value of its improvements to the former's wharf property as indisputable, if the latter corporation should not succeed itself as purchaser of the franchise and lessee of the wharf property, it seems but the exercise of administrative discretion on the part of the officers of the municipality, upon the sale of the franchise and lease of the property, to secure the municipality against the consequences of its obligation by requiring the purchaser to relieve it therefrom, so long as such a requirement does not operate to destroy fair competition upon the sale, and so prevent the obtaining of the highest possible purchase price for the franchise. That such cannot be the result from the requirement that a purchaser and lessee other than the Staten Island Rapid-Transit Company shall pay to the last-mentioned corporation the value of its improvements is manifest from the further provision of the agreement of

August 4, 1888, that, if the Staten Island Rapid-Transit Company shall succeed itself as purchaser of the franchise and lessee of the property, the improvements, upon the expiration of its further lease,. shall be and become the property of the mayor, etc., without payment therefor of any sum whatsoever. Instead of being a discrimination in favor of the Staten Island Rapid-Transit Company, the requirements tend rather to the creation of an equality among all who are likely to bid upon the sale. If the Staten Island Rapid-Transit Company succeeds as purchaser and lessee, it forfeits its claim against the municipality for $175,000, the value of the improvements made. If another than the Staten Island Rapid-Transit Company is the purchaser and lessee, he must pay the same amount,. while he has the like advantage of the use of the improvements during the term of his lease. In either event, however, the municipality acquires the improvements, without expense to it. Motion for continuance of the injunction denied, and preliminary injunction dissolved, with $10 costs.