They are distinctly confidential and are clearly within the provisions of the statute.

We have examined the other exceptions upon the trial and are satisfied that they are not well taken, and that the judgment of conviction must be affirmed.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and McLAUGHLIN, JJ., concurred.

Judgment affirmed.

---

In the Matter of the Application of the Counsel to the CORPORATION OF THE CITY OF NEW YORK, on Behalf of the Mayor, Aldermen and Commonalty of the City of New York, to Acquire Title to Certain Lands, etc., Pursuant to Chapter 102 of the Laws of 1893, for the Driveway Commonly Called the Speedway.

FREDERICK BOOSS, Appellant; MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

*New York speedway — the easement of a riparian owner on the west bank of the Harlem river — it may be extinguished without compensation — limit of the city's right.*

The city of New York has the power to extinguish without compensation any easement which a riparian owner of lands on the west bank of the Harlem river on Manhattan Island may have in the tideway and lands under water adjacent to his premises, by filling in the tideway and the land under water and constructing a driveway thereon.

*Semble,* that the only limitation upon the right of the city to extinguish the riparian owner's easements without compensation is that the improvement shall not interfere with the ordinary navigation of the stream.

APPEAL by the claimant, Frederick Booss, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of July, 1897, confirming the report of commissioners of estimate and assessment appointed in the proceeding to acquire title to property for a road or "driveway" along the westerly bank of the Harlem River in the borough of Manhattan, city of New York.

This road or "driveway" was constructed under authority of an act of the Legislature of the State of New York. (Laws of 1893,

chap. 102.) By section 10 of that act it is provided, among other things, that no portion of the road or " driveway " shall be used for any other purpose than, for riding by equestrians and driving of carriages, and all trucks, carts and vehicles of all kinds for the transportation of merchandise or freight of any description shall be excluded therefrom, and that no street or other railway shall be laid down on the " driveway " or any portion thereof. The claimant Booss is the owner of land on the westerly side of Harlem river. The speedway, as constructed, is built in front of his land. It is constructed partly in what is generally called the tideway of the Harlem river, and partly over land under water beyond the tideway belonging to the city of New York. The effect of the construction is to shut off direct access to some of the claimant's lots from the river. Prior to the construction and when the speedway was projected, the tide ebbed and flowed in front of the claimant's land. He insisted before the commissioners that he was entitled to compensation for the destruction of his easements as a riparian owner, but the commissioners rejected that claim and made no allowance for the easements taken. The present appeal involves only the question of his right to such compensation.

*Henry Grasse,* for the appellant.

*Theodore Connoly,* for the respondent.

PATTERSON, J.:

The appellant's claim to compensation for the destruction of easements appurtenant to his property is one resting altogether in private right, and does not grow, as seems to be argued, out of any relation of the public to the action of the city in building upon the tideway. He claims as owner of upland property, to which certain riparian rights are attached. Those rights are strictly in the nature of easements. It is unnecessary to consider their particular character or extent. It has been definitely settled that whatever easements a riparian owner of lands on the west bank of the Harlem river on Manhattan Island may have are subject to extinguishment or destruction without compensation by the city of New York, exercising such superior rights as belong to it as owner of the tideway, that is, the land under water, between high and low-water mark.

(*Mayor* v. *Hart*, 95 N. Y. 443 ; *Sage* v. *Mayor*, 154 id. 61 ; *Jarvis* v. *Lynch*, 157 id. 445.)   It would be a useless task to re-examine all the judicial decisions bearing upon this subject.  It is sufficient to point out again that the right and title of the city of New York to the tideway, as it is called, distinctively rests upon its ancient charters and the confirmations thereof, by royal authority, by acts of the Colonial Legislature, and by the provisions of the Constitutions of the State of New York.   The original right of the city arises under the Dongan charter of 1686, and that charter contains the express provision (§ 14) that the city of New York may "at any time or times hereafter when it to them shall seem fit and convenient, take in, fill and make up and lay out all and singular the lands and grounds in and about the said City and Island Manhattan's and the same to build upon or make use of in any other manner or way as to them shall seem fit as far into the rivers thereof and that encompass the same at low water mark aforesaid."   The subject of the grant as contained in the 3d section of the charter is, "All the waste, vacant, unpatented and unappropriated lands lying and being within the said City of New York and on Manhattan's Island aforesaid, extending and reaching to the low water mark, in, by and through all parts of the said City of New York and Manhattan's Island."   According to all the adjudications, the grant includes the tideway on the Harlem River.

It is said in *Jarvis* v. *Lynch* (157 N. Y. 445), referring to what was decided in *Sage* v. *Mayor* (154 id. 61), that the upland owner, deriving title as this plaintiff does through the Nicolls grant, "took no title to the tideway or other right in the river in front of the upland, than would consist in those privileges or easements inherent in the riparian title, and which might be held, as against all but the Crown as trustee for the People at large."

It is admitted by the learned counsel for the appellant in the present case that the city of New York has authority to fill in the land under water immediately in front of the upland owner, and to lay out streets and build wharves and bulkheads, and thereby to destroy, without compensation, those easements or privileges which the upland owner enjoyed ; but it is claimed that, unless the use to which the land is appropriated after the improvement has been made is in some way connected with commerce, the upland owner

would be entitled to compensation for the destruction of his ease-
ments.   In other words, the right to compensation is predicated,
not upon the mere fact of the extinguishment of the easements, but
upon the use to be made by the city of its property in the tideway
after the easements are taken.   It would seem that, if the city has
the power to extinguish those easements at all, they are inherently
of no value to the upland owner, for, as was remarked by Judge
FINCH in the *Hart Case* (*supra*), they lie at the mercy of the
sovereign.   But, without stopping to consider further that sugges-
tion, we think that the city's right to construct the " driveway " on
its own land in front of the appellant's premises is incontrovertibly
fixed by the provision of the Dongan charter referred to, giving it -
authority to build upon or make use of the land in " any other manner
or way as to them (it) shall seem fit as far into the rivers thereof and
that encompass the same at low water mark."   This, of course, with
the reservation that no structure put upon the land should interfere
with the navigation of the stream, and the right of navigation is one
of passage for the public.   Although it has often been said that the
ownership of the tideway was of private right in the Crown prior to
1686, yet it has been decided by ultimate authority in the cases
above cited that the Crown held as trustee for the people at large.
The scope of that trusteeship, with its incidents and limitations, has
never been fully defined.   In *Bedlow* v. *New York Floating Dry
Dock Co.* (112 N. Y. 274) it is remarked : " It has been sometimes
said that the ownership of the fee in such lands gave the city, as mat-
ter of legal right, authority to erect and build such structures thereon
as they saw fit to make.   We are inclined to think that this propo-
sition to its full extent cannot be maintained.   The right of control
over the navigable waters of the state is a legislative power and
cannot be destroyed by any authority whatever.   The right of the
People to use the natural public highways of the state is *jus pub-
lica* and cannot be taken away or seriously impaired by any legisla-
tion whatever."   That is a limitation upon the absolute ownership,
but it refers to the public right, and there is nothing in the proof
in this case which shows that the construction of this driveway in
any manner interferes with navigation of the Harlem river.   The
driveway is constructed under the authority of the Legislature.
There is no pre-emptive right in the upland owner.   The improve-

ment is not for the pecuniary benefit of the city. The driveway is a public work, constructed for a public purpose, and it is indisputable that authority to build it is derived from the express terms of the Dongan charter above quoted. In most of the cases in which a contest has arisen respecting the right of the city in the tideway, it has appeared that the improvement made by the city was one which did not interfere with commerce or navigation, but on the contrary tended directly or indirectly to the benefit thereof. All that can be said concerning this driveway is that it does not interfere with navigation; and recurring to the distinction which is sought to be made between this case and those cited, we fail to find, after a thorough examination of the authorities, that there was any limitation whatever upon the part of the Crown to make the grant of authority contained in the 14th section of the Dongan charter, except that what was authorized should not interfere with the ordinary navigation of the stream.

Our attention has been called again to certain passages in Sir Matthew Hale's Essay "*De Jure Maris*" etc., concerning navigable streams and rivers and ports, but we do not find them applicable to this case. The question here is not one of public, but purely of private right, and the power of the Crown to make a grant of land under water between high and low-water marks cannot be challenged or disputed, although it is subject to the implied condition that no use shall be made of the land which shall interfere with the general right of navigation. The first and second books of Sir Matthew Hale's treatise do not attempt to deal with the whole subject of the power and authority of the Crown over what is now called the tideway. In speaking of the essay, Mr. Hargrave, who first published it a hundred years after it was written, says, "The main and leading purpose of the author certainly was to give a legal history of the customs from their earliest infancy to the Restoration and for some years after. The first and second parts of the treatise, which concern some collateral subjects having affinity to the ports and also the ports themselves must, therefore, be considered merely as preliminary and introductive." We have failed to find in this treatise or in any other work of authority that where, prior to the date of the Dongan charter, either the Crown itself or a grantee from the Crown has built upon the tideway structures which do not

interfere with navigation, they have been declared illegal or wrongful as affecting the rights of a private owner of upland in front of which such structures have been built. The ample terms of the 14th section of the Dongan charter give the city of New York the right to build upon the tideway in the Harlem river. We cannot assume that the Crown lawyers by whom this charter was prepared did not know the extent of the royal power or authority to grant it, in the precise terms in which it is couched, and as the rights of the city of New York have existed and have been exercised for 215 years under the terms of that charter, we are not inclined to further limit those rights until instructed to do so by controlling judicial authority.

The order appealed from should be affirmed, with costs.

VAN BRUNT, P. J., RUMSEY and McLAUGHLIN, JJ., concurred.

Order affirmed, with costs.