## PHILLIPS v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 21, 1908.)

MUNICIPAL CORPORATIONS—CONTRACTS IN GENERAL—BIDS—RECOVERY OF DEPOSIT—SALE OF FERRY FRANCHISE.

The sinking fund commissioners adopted a resolution authorizing the comptroller to sell a ferry franchise at public auction to the highest bidder. The terms of sale required the highest bidder to deposit with the comptroller at the time of sale a sum equal to 25 per cent. of the amount of his bid, to be credited on the rent or forfeited to the city if such bidder did not execute the lease when required by the comptroller. The highest bidder paid the required amount and received a receipt stating that the payment would be forfeited to the city if the lease was not executed when required by the comptroller. *Held,* that such bidder, or his assignee, could not recover the payment on failure to execute the lease when required to do so.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, §§ 864, 865.]

Appeal from Trial Term.

Action by Frank E. Phillips against the city of New York. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Wingate & Cullen (George W. Wingate, of counsel), for appellant.

Francis K. Pendleton, Corp. Counsel (Theodore Connely and Alexander Strouse, on the brief), for respondent.

CLARKE, J. The plaintiff, as assignee of Alrick H. Man and of the Bay Ridge & New York Ferry Company, instituted this action on July 31, 1900, to recover $3,750, with interest from October 8, 1894, paid by the said Man as deposit in accordance with the terms of sale of the lease of the franchise of the so-called Bay Ridge Ferry for the term of 10 years. The so-called Bay Ridge Ferry ran from the foot of Whitehall street, in the then city of New York, to the foot of Sixty-Fifth street, in the then city of Brooklyn, and had been established by the said city of New York and operated for a number of years prior to 1893. In 1893 it was being operated by the Staten Island Rapid Transit Railroad Company, under a lease from the city which expired May 1, 1893. This company also operated a ferry from the foot of said Whitehall street to Staten Island. Plaintiff's assignor, Man, was the president of and largely interested in the New York & Sea Beach Railroad Company, a road running from Sixty-Fifth street to Coney Island, and having its connection with New York by way of the Bay Ridge Ferry. There was at the same time a ferry which ran from a point on South street, between Piers 2 and 3, East river, New

York City, to Thirty-Ninth street, in the city of Brooklyn, and was operated by the New York & South Brooklyn Steam Transportation Company, of which one John W. Ambrose was then and for a number of years subsequently president. This ferry was an active competitor of the Bay Ridge Ferry.

Section 180 of the consolidation act (chapter 410, p. 45, of the Laws of 1882) provides that:

"The commissioners of the sinking fund possess the power, and they are authorized to lease in the manner provided by law, along with the franchise of a ferry within said city, such wharf property, including wharfs, piers, bulkheads or structures thereon, and slips, docks and water fronts adjacent thereto, used or required for the purposes of such ferry, now owned or possessed, or which may be hereafter owned or acquired by said city, or to which the corporation of said city is or may become entitled, or which it may become possessed."

Section 170 (page 43) of said act provides that:

" * * * The said board shall * * * have power to sell or lease for the highest marketable price or rental at public auction or by sealed bids, and always after public advertisement and appraisal, under the direction of said board, any city property except wharfs or piers, but not for a term longer than ten years, nor for a renewal longer than ten years."

The Court of Appeals construed these two sections in Starin v. Edson, 112 N. Y. 206, 19 N. E. 670:

"The effect of the two sections (170, 180) upon the powers of the commissioners of the sinking fund is to place in their hands the right generally to sell or lease for the highest marketable price or rental at public auction or by sealed bids any city property whatever, excluding wharves or piers, excepting that wharves or piers used or required for the purposes of a ferry, the right to run which the commissioners are about to lease, may be leased 'along with the franchise to run such ferry,' and such lease must be in the manner provided by law. The manner provided by law in reference to such a lease is the law which governs the commissioners of the sinking fund in their selling or leasing city property, and that law is found in section 170 of the act in question. Taking their powers from these two sections (170, 180), the commissioners are invested with power to make a lease of the ferry franchise, and, along with it and as part of it, a lease of the wharf or pier required for the purpose of using the ferry franchise, and the whole subject of the lease is, in substance, one entire thing, a ferry franchise and a place to land, without which the franchise of the ferry would be comparatively worthless. This whole piece of property, franchise and wharf, must be leased for the highest marketable rental at public auction or by sealed bids, according to the mandate of section 170. Construing the language of section 180 to mean that the wharf or pier is to be leased along with the ferry franchise as part thereof, and that the whole is to be put up as one entire piece of property, the leasing provided by law is to be a leasing of such property for the highest marketable rental at public auction."

The sinking fund commissioners adopted the following resolution on April 10, 1894:

"Resolved, that the comptroller be and hereby is authorized to take measures to advertise and sell at public auction to the highest bidder, as provided by law, a lease for the term of ten years from June 1, 1894, of the franchise of the ferry from the foot of Whitehall street, New York, to Bay Ridge, at Sixty-Fifth street, Long Island, upon the usual terms and conditions; and, in addition to the yearly rental to be paid for the ferry franchise, a further condition of the sale is that the purchaser and lessee of such franchise may have the use for its ferry purposes of that portion of the landing and build-

ings at the foot of Whitehall street which are now and were heretofore occupied and used in connection with the operation of the Bay Ridge Ferry, and of the privileges heretofore exercised in operating said Bay Ridge Ferry, by the payment of $8,000 per annum, payable quarterly, during the term of the new lease, beginning June 1, 1894. * * * During the term demised the minimum or upset price of the franchise of said ferry for and during the term of the lease thereof is appraised and fixed at 5 per centum of the gross receipts for ferriage of passengers, vehicles, freight, etc., the total amount of which rental shall not be less than $15,000 per annum, payable quarterly in advance. * * *"

The sale was duly advertised, and was from time to time duly adjourned until October 8, 1894, when it took place. The terms of sale provided, among other things, as follows:

"The highest bidder for the lease of the franchise and wharf property of the said ferry will be required to pay the auctioneer's fee and to deposit with the comptroller at the time of the sale a sum equal to 25 per cent. of the amount of his bid therefor, which sum shall be credited on the rent of the first quarter of the first year of the term of the lease, or to be forfeited to the city if the lease shall not be executed by the highest bidder or purchaser when notified and required by the comptroller."

It contained the terms and provisions provided by the resolution of the sinking fund commissioners, the requirement of a bond conditioned upon the faithful performance of the conditions of the lease, and the following:

"The form of lease which the purchaser will be required to execute can be seen at the office of the comptroller."

At the public sale held in accordance with the resolution of the sinking fund commissioners and terms of the sale as advertised, Mr. Ambrose and Mr. Man, representing rival interests, engaged in a spirited competition for this franchise, as the result of which Mr. Man bid 21⅛ per cent. of the gross receipts, which was one-eighth of 1 per cent. higher than Mr. Ambrose offered, and became the purchaser. He thereupon paid $3,750 and received therefor a receipt, which reads as follows:

"Received for the corporation of the city of New York, from Alrick H. Man, $3,750 for 25 per cent. of the bid for franchise for the ferry from the foot of Whitehall street, N. Y., to Bay Ridge, Sixty-Fifth street, L. I., which sum shall be credited on the rent of the first quarter of the first year of the term of the lease, or to be forfeited to the city if the lease shall not be executed by the purchaser when notified and required by the comptroller."

On the 7th of June, 1895, the comptroller wrote to Mr. Man:

"You are hereby respectfully requested to execute the lease of the ferry to Bay Ridge, Long Island, purchased by you on October 8, 1894."

Mr. Man did not sign the lease as requested.

It is evident from this record that by reason of the business rivalry of the competitors upon the sale for this ferry franchise the plaintiff's assignor had been forced to make a bid resulting in a bad bargain. It appears affirmatively that neither Mr. Man nor the company which was formed to take over the lease and operate the ferry was ever willing to perform under the terms of the sale. Various propositions were made to the city officials looking towards a modification of the terms, a resale upon other terms, or the giving of indemnity by the city to

hold the lessee harmless. An effort was made to show that by reason of certain injunction suits the city was not in a position to perform upon its part. It is true that certain preliminary injunctions were issued; but each of these was dissolved upon the motion to continue the same during the pendency of the actions, so that from the 1st day of November, 1894, to the 27th day of May, 1896, and so, of course, when the comptroller notified plaintiff's assignor to execute the lease on June 7, 1895, there was no injunction standing in the way of an execution of the lease.

It was not contemplated that the moneys deposited should in any event ever be returned to the depositor. 'If the lease was executed, it was to be applied to the payment of the rent reserved. If the lease should not be executed by the highest bidder and purchaser, when notified by the comptroller, the deposit was to be forfeited, and said provision was incorporated, not only in the terms of sale, but also in the receipt for the deposit given to the plaintiff's assignor. We have seen that plaintiff's assignor was notified to execute the lease. This he never did. Having prevented the sale to another purchaser almost as anxious as himself to obtain the franchise, he now seeks to recover back the amount of his deposit. The burden is upon him to make out a case. Plaintiff's assignor never offered to execute the lease called for by the terms of sale. He never was willing to execute such lease.

The learned court at Special Term has found that the mayor, aldermen, and commonalty of the city of New York was ready and able to complete the contract for the purchase and sale of such franchise, and that neither it nor the defendant, its successor, had defaulted in any manner in relation to such contract of purchase and sale of such franchise; that neither Alrick H. Man, nor the New York & Bay Ridge Ferry Company, nor the plaintiff, ever completed the purchase of such franchise, or complied with the terms and conditions of such sale, or offered to the mayor, aldermen, and commonalty of the city of New York to perform such contract of purchase and sale of such franchise, before or since the commencement of this action. Such findings are supported by the evidence, and upon this record we are satisfied that the judgment dismissing the complaint is right.

The judgment appealed from should therefore be affirmed, with costs to the respondent. All concur.