CRYSTAL SPRING FINISHING COMPANY *vs.* TOWN OF FREETOWN.

Bristol.   December 10, 1942. — June 30, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*Municipal Corporations*, Ultra vires, Disposition of property.

One, who had purchased land from a town, giving in part payment a note secured by a mortgage on the land, had no standing to contend that the acceptance of the note and mortgage were ultra vires the town.

BILL IN EQUITY, filed in the Superior Court on February 21, 1941.

The suit was heard by *Walsh*, J.

Argued for the plaintiff by its president, D. V. Guillemette, not a member of the bar.

*G. H. Potter*, for the defendant.

DOLAN, J.   This is a bill in equity by which the plaintiff seeks to have the defendant restrained from foreclosing a

mortgage held by it on certain real estate, which had been purchased by the plaintiff from the town in September, 1935.

The case was referred to a master. No objections were made to her report by either of the parties, and an interlocutory decree was entered confirming the same. Thereafter a final decree was entered dismissing the bill, and the plaintiff appealed.

Material facts found by the master follow: One Guillemette, the president and general manager of the plaintiff corporation, had been negotiating for a considerable period of time for the purchase of the real estate in question, which had been acquired by the town under a decree of the Land Court in proceedings to foreclose the right of redemption of a tax title. He talked to various town officers relative to the subject matter and conferred especially with one Richmond, the chairman of the board of selectmen, and after securing an option on the property "used that option in selling stock." He was present at a board meeting "with all members of the committee named to arrange for the sale of the property [see G. L. (Ter. Ed.) c. 40, § 3] and . . . there was a discussion about how a mortgage and note could be arranged for." The plaintiff "was not deceived or misled by the board of selectmen, the committee members, or any official representing" the town.

On September 21, 1935, the town, by deed of a committee thereunto duly authorized by vote passed at a special town meeting, conveyed the premises in question to the plaintiff by quitclaim deed. The purchase price, "including land, buildings, machinery and water rights," was $22,000. Of this amount $5,000 was paid in cash, and a note secured by mortgage of the realty was given for the balance. The plaintiff made payments from time to time which reduced the amount due to $9,500 as of October 1, 1940. In the period between 1935 and 1940, the plaintiff expended $74,181.62 for new equipment, improvements and repairs. Sometime "in 1940 the . . . [plaintiff] defaulted on . . . [its] interest and principal payments." It tried to secure a second mortgage on the property and could not do so.

It "acted with reasonable promptness . . . [itself] and through . . . [its] attorney in all matters concerning this action and . . . committed no laches." The master further found that the amount due from the plaintiff to the defendant to July 1, 1941, for principal, interest, taxes, insurance and related expenses totalled $15,218.48. It was agreed by the parties that no act of the Legislature was ever passed permitting the town to lend money or take a mortgage and note from the plaintiff.

The plaintiff contends that the town had no power to sell. its "private property" and to take in part payment therefor a promissory note secured by mortgage of the property without an enabling act of the Legislature; that there being no such act the note and mortgage in question are invalid; and complains that as a result, it (the plaintiff) was unable to secure a second mortgage on the property, and was forced to default in its payments to the town.

Postponing for the moment the question of the plaintiff's right to attack the validity of the transaction in question, it is not inappropriate to state that it is firmly established that towns may hold real estate for the public use of the inhabitants and convey the same. Precise authority for the conveyance of land acquired after foreclosure by a town of the rights of redemption under a tax title or taking is to be found in G. L. (Ter. Ed.) c. 60, § 77, which should be read together with G. L. (Ter. Ed.) c. 40, § 3. The powers of towns to hold real estate for the use of the inhabitants and to convey the same have existed from earliest times. *Commonwealth* v. *Wilder*, 127 Mass. 1, 3. See *Noyes* v. *Ambler*, 296 Mass. 524, 528.

It is also settled that it is the "general rule that only the State can question the power of a town to acquire real estate." *Holliston* v. *Holliston Water Co.* 306 Mass. 17, 23, and cases cited. We are of opinion that in like manner only the State may question the power of the town to take back a purchase money mortgage in connection with the conveyance of real estate, and that it is not open to the plaintiff, in an attempt to escape the obligations assumed by it voluntarily upon the conveyance to it of the real estate

in question, to set up that the transaction was beyond the authority of the town in that respect. See *Buffalo* v. *Balcom,* 134 N. Y. 532, 534, 535, 536, and cases cited; *Fergus Falls* v. *Fergus Falls Hotel Co.* 80 Minn. 165, 170.

In view of what we have just said, it is unnecessary to consider whether the action of the town in accepting as part payment for the conveyance the note and mortgage in question was unauthorized as matter of law. It may be noted, however, that upon almost identical facts it was said in *Buffalo* v. *Balcom,* 134 N. Y. 532, 533, that it was difficult to see how the State would have any interest in arresting the operation of such a contract and the recovery of the money equitably due upon it.

*Decree affirmed with costs.*