CLARA M. BAZILLE v. BOARD OF COUNTY COMMISSIONERS OF
RAMSEY COUNTY.[1]

January 14, 1898.

Nos. 10,778—(227).

County Commissioners — Contract — Unauthorized Purchase of Real
Estate Invalid Even after Performance by Other Party.

Where a board of county commissioners enter into a wholly unauthorized contract,—one outside of and in excess of their limited statutory powers,—it is not binding upon the county, although its terms and conditions have been performed and complied with by the other party thereto.

[1] Reported in 73 N. W. 845.

**Same—Ultra Vires a Defense to Recovery of Price by Vendor—Delivery of Deed.**

Where the illegality of the purpose for which certain real property was purchased by such board, the utter incapacity of the board to purchase for such a purpose, and that the contract was ultra vires, appear upon the face of the transaction and in the deed of conveyance, the board may invoke its want of power to purchase as a defense in an action brought to recover the purchase price. The vendor, in such a case, cannot recover, and it is of no consequence that he has delivered a deed of the property, which has been accepted by the board.

Action in the district court for Ramsey county to recover $15,715.-13, and interest. A demurrer to the complaint was sustained, Bunn, J. From the order sustaining the demurrer plaintiff appealed. Affirmed.

The resolution referred to in the opinion contained recitals that the city of St. Paul had acquired a large tract of land known as Phalen Park; that the board of park commissioners of that city desired to procure a certain government lot for public park purposes "which tract of land adjoins said Phalen Park and is necessary for the purpose of controlling the approaches of Lake Phalen, and under the law governing said board they cannot acquire said land except by grant or donation"; that said land is beyond the limits of said city; that a proposition had been made to the defendant board to purchase the land, and a committee of the board had expressed their willingness to purchase said land, provided it met with the approval of the park commissioners, and donate the same to the city. It then continued as follows:

"And whereas, the board of park commissioners has signified its approval of the action of said committee, and by resolution, a copy of which has been transmitted to this body, has requested the board of county commissioners to purchase said property at a reasonable price and donate the same to the city of St. Paul for public park purposes;

"Now, therefore, by virtue of the power vested in the board of county commissioners under chapter 278, General Laws 1895, entitled 'An act to authorize counties to procure title to lands for public park purposes, to improve the same by the preservation or cultivation of timber thereon, and establish or aid in establishing public parks';

"Be it resolved that the sum of $17,360 be and the same is hereby

appropriated out of any moneys in the county treasury not otherwise appropriated for the purposes herein mentioned, and the chairman of this board is hereby authorized, empowered and directed to draw his warrant on the county treasurer for said sum of $17,360 in favor of C. M. Bazille upon her executing and delivering a good and sufficient deed of conveyance to the board of county commissioners of Ramsey county, Minnesota, of the following described tract of land, to-wit:" (Here follows description of land.)

"To be used for public park purposes, and upon the county attorney's opinion approving the title to said last above described property; and the county attorney is hereby instructed to examine the title of said tract of land and render an opinion thereon as soon as practicable to the chairman of this board or to the county auditor."

*Jared How*, for appellant.

It does not appear on the face of the complaint that the defendant purchased the land for an improper purpose. Probably the rule for the construction of the resolution is that which appertains to the construction of statutes. The resolution consists of the preamble and the resolution proper. The rule for construction is that, when the statute is complete in itself, it must be construed from its own contents, and the preamble may not be resorted to to qualify or explain it. Yazoo v. Thomas, 132 U. S. 174, 188; Holbrook v. Holbrook, 1 Pick. 248, 251; Lothrop v. Stedman, 42 Conn. 583.

But, conceding for the argument that there was a manifest intention of defendant to use the land for an improper purpose, this action will lie. If the decision of the court below is to be sustained, it must be sustained on the theory that the transaction was void ab initio because ultra vires. This action is on a debt arising from the delivery and acceptance of the deed. The contract has been fully executed. Fletcher v. Peck, 6 Cranch, 87, 137. The deed is an executed unilateral contract. Langdell, Contr. § 112. Unless wholly void, the executed contract stands and the defendant has the advantage of it, while refusing to respond to the debt arising out of it. If the deed is void, no title passes to the defendant by virtue of it. If it was not void, even though voidable, title passes and is now vested in the defendant. Under defendant's contention the validity or invalidity of a deed would be determined by the state of mind of defendant at the time of the delivery of the

deed, and any subsequent change, in any manner, of mind or conduct of the defendant could not affect its validity or invalidity. Otherwise title to defendant's real estate may be good one day and worthless the next. The inevitable result of such a rule is that no municipal corporation can know whether its title to any land is good except by evidence wholly outside of the record.

It is now the universal rule that when corporations have power to acquire real estate for any purpose, the question whether any particular real estate has been acquired under proper circumstances or for proper purposes, is for the state alone. Cowell v. Springs, 100 U. S. 55; Hamsher v. Hamsher, 132 Ill. 273; Hough v. Cook, 73 Ill. 23, 28; National Bank v. Matthews, 98 U. S. 621; Whitman v. Baker, 3 Nev. 386; Barrow v. Nashville, 28 Tenn. 303; Borough v. County, 28 Minn. 515; 2 Dillon, Mun. Corp. § 574; Hayward v. Davidson, 41 Ind. 212; Natoma v. Clarkin, 14 Cal. 545; Chambers v. City, 29 Mo. 543; Raley v. Umatilla, 15 Ore. 172, 176; In re Contract, L. R. 8 Eq. 21 (Cm. 5 Am. Law Rev. 283, note); Wright v. Hughes, 119 Ind. 324; Lestapies v. Ingraham, 5 Pa. St. 71, 81; Parish v. Wheeler, 22 N. Y. 494, 508.

*Samuel A. Anderson*, for respondent.

The complaint shows on its face that the defendant board attempted to appropriate county funds to purchase property not to be held as public property of said county under the terms of Laws 1895, c. 278, § 1. The defendant attempted to enter into a contract which is null and void. Mitchell v. Board, 24 Minn. 459; Throop, Pub. Off. § 5551; Mechem, Pub. Off. §§ 506, 511; Green v. Beeson, 31 Ind. 7; Vose v. Deane, 7 Mass. 280; Clark v. Des Moines, 19 Iowa, 199; Williams v. Davidson, 43 Tex. 33; City v. Brenham, 67 Tex. 542; Hanger v. Des Moines, 52 Iowa, 193; 1 Dillon, Mun. Corp. § 91, and notes, also c. 14.

COLLINS, J.

From the complaint in this action it clearly appeared that the defendant board of county commissioners attempted to purchase real property for the avowed purpose of donating it to the city of St. Paul for park purposes, and that there was no intention upon its part to acquire the land for use as public property of the county,

as the board was authorized to do, under the provisions of Laws 1895, c. 278, § 1. And it also clearly appeared that the plaintiff had knowledge of, and was a party to, this ultra vires act, and to this attempt to divert public funds, and to misappropriate them to an unlawful, illegitimate and forbidden purpose. The resolution passed by defendant board, by which it resolved to purchase plaintiff's land, contained recitals from which it conclusively appeared that the property was being acquired for the express purpose of donating it to the city, while the appropriation of the funds with which to pay the purchase price agreed upon was "for the purpose herein mentioned," according to the language of the resolution. This entire resolution was incorporated into the plaintiff's deed, together with a recital that herself and her husband had, by an instrument in writing, duly accepted the terms and conditions of the resolution, and had delivered the written acceptance to defendant board.

It was also alleged in the complaint that the deed had been duly executed and delivered to defendant board, had been duly accepted, and that the chairman thereof had by resolution been directed to draw his warrant on the county treasurer for the amount of the stipulated purchase price, which amount had already been appropriated by the board itself.

It very clearly appeared from the resolution, made a part of the deed, that the defendant board was acting without the authority of law, and in excess of its powers, when attempting to use the county funds for an unauthorized purpose. On the face of the resolution, as well as upon the face of the deed of conveyance, it appeared affirmatively that the attempted purchase was not for any of the purposes mentioned in the 1895 statute. The enactment of this statute did not confer the power upon the board to purchase real property for any other purpose than that mentioned and prescribed. There was an absolute lack of authority on the part of the board to purchase land for donation to the city, so that the attempt so to do was something more than an abuse or misapplication of the granted power or authority. It was an act ultra vires.

Therefore the case presented by the complaint is one where the board of county commissioners, acting without the authority of

law and in excess of their powers, enter into an agreement with a landowner to purchase her property, she having full notice that the purchase is for an illegal and unwarranted purpose, and, if completed, will wrongfully and unlawfully divert and misapply county funds.   In pursuance of the unlawful purpose, such landowner executes and delivers to these officials a deed of conveyance, which they accept, in form, and then refuse to pay the purchase price, invoking their own want of power to purchase the land as the ground for refusal.   The question is whether the landowner can compel the payment of this money out of the county treasury, and thus enforce a contract made by the commissioners in excess of their power and authority.

We are of the opinion that the question was disposed of more than 20 years ago in Mitchell v. Board, 24 Minn. 459.   It was there held that the board of county commissioners act under limited statutory authority, and, in order to bind the county upon any contract, they must keep within the limits of such authority, and, further, that knowledge of the extent of their official authority must be imputed to every person dealing with them.   That was a case where the board contracted with plaintiff for the publication in a newspaper of a county financial exhibit of a different character than that prescribed by statute, and, after such publication, an action was brought to recover for the reasonable value of the work.   It was said in the opinion, at page 461:

"It is not for the board of commissioners to determine its objects, and to substitute for the required published statement an entirely different one, relating to another period of time, as answering equally well the requirements of the statute.   If they do this their act, being wholly unauthorized, will not be binding upon the county, and no party dealing with them will be permitted to recover from it the value of his services for work done under such void authority. For reasons of public policy the law wisely imputes to every one, transacting business with public officers who are acting under a limited statutory authority, full knowledge of the extent of such their official power and authority.   The adoption of any other rule would often work incalculable injury to the public."

The board of county commissioners, when purchasing real property, act under limited statutory authority.   They may purchase for

certain specified purposes, but for no other purpose. Under the provisions of chapter 278, supra, power was conferred to purchase an amount of land reasonably necessary for public uses, and to hold the same as public property of the county, for building sites or any other purposes, including park purposes. But this was the limit of the authority conferred by that statute, and the acts of the board under which plaintiff seeks to recover were in direct disregard of this limitation. The attempted purchase was not for public purposes. The object was not to hold the land as property of the county, but the avowed purpose and design was to bestow it gratuitously upon the city of St. Paul. The acts upon which plaintiff relies were just as much in excess of authority as was that declared in the Mitchell case to be of no binding force upon the county.

Again, this subject was referred to in Borough v. County, 28 Minn. 515, 11 N. W. 91. There the board of county commissioners entered into an unauthorized contract with the borough, under which the latter paid the sum of $5,000 into the county treasury, which was used in the erection of a court house. In an action brought against the county to recover the amount so paid, the court stated, at page 519:

"This contract being beyond the power of the county, the act of the board of county commissioners in making it is not binding upon the county, and the borough acquired no legal rights under it."

The case first cited goes to the extent of holding that where a board of county commissioners enter into a wholly unauthorized contract, one outside of and in excess of their limited statutory powers, it is not binding upon the county, although its terms and conditions have been performed and complied with by the other party thereto. And the second case is exactly in line with this doctrine. The contract in question, evidenced by the proposition of the board to purchase the land for an illegal purpose and plaintiff's acceptance of the proposition, was such a contract, and, having no binding force, the county cannot be compelled to abide by it and pay the money.

But counsel for plaintiff asks us to bear in mind that his client is not seeking specific performance, but simply payment for land

the title to which has vested in defendant board by delivery and acceptance of the deed,—a full execution of the original agreement. We need not express any opinion as to whether the title to this land has or has not vested in the board, or, if it has vested, what remedy the plaintiff has. If the contract of purchase was illegal and invalid for the reasons hereinbefore mentioned, it could not be validated by any act omitted or performed by either party. Delivery and acceptance of the deed could not legalize a transaction wholly unauthorized by law. It could not confer upon the grantor in the deed the right to enforce payment upon a contract which the board, exercising a limited statutory power, could not execute. See Field, Ultra Vires, 380, note.

Counsel for plaintiff has relied principally upon a class of cases in which it has been held that, where corporations have power to acquire real estate for any purpose, or under any circumstances, the question whether any particular tract has been acquired for proper purposes, or under proper circumstances, is for the state alone. In one of the text-books the doctrine announced is that,

"If there is capacity to purchase, the deed to the corporation devests the estate of the grantor, and there is a complete sale; and whether the corporation in purchasing exceeds its power is a question between it and the state, and does not concern the vendor or others." 2 Dillon, Mun. Corp. § 574.

This rule has been established in cases where the grantor in a deed has attempted to recover possession of real property conveyed by him to a corporation, or where he has attempted to set aside a conveyance on the ground that the grantee corporation had exceeded its power when purchasing, or where the corporation has been compelled to bring an action in ejectment. But in none of these cases has it been held that where the illegality of the purpose for which the real estate was purchased, and the utter incapacity of the public officials to purchase it for such purpose, appears upon the face of the transaction and in the deed of conveyance, it is of no concern to any one but the state; nor has it been held that under such circumstances the vendees, public officers, could not invoke their own want of power as a defense in an action brought to recover the purchase price. We do not consider the doctrine an-

nounced in these cases as applicable here. "A just regard for public welfare will not permit the court to compel the performance of a contract like the one in question." [2]  And holding that a cause of action was stated in the complaint would be equivalent to holding that performance could be compelled.

Order affirmed.

---

[1] Reported in 73 N. W. 847.        [2] Borough v. County, 28 Minn. 515, at 520.