## CITY OF VALPARAISO v. VALPARAISO CITY WATER COMPANY.

[No. 4,297.    Filed January 14, 1903.]

CITIES.—*Contract with Water Company.*—Under a contract by a water company to furnish a city with hydrants at a rental of not more than $50 each per annum, the amount recoverable thereon would be the reasonable value of the use of the hydrants.    p. 320.

SAME.—*Contracts.—Ultra Vires.*—It is no defense to an action against a city by a water company for the collection of rental for hydrants that the franchise contained certain provisions beyond the power of the city.    pp. 320–327.

SAME.—*Contract with Water Company. — Ordinances.*—In an action by a water company against a city to collect rent for hydrants, it was not necessary that ordinances adopted by the city directing the laying of new lines and providing for additional hydrants should be filed with the complaint.    pp. 327, 328.

SAME. — *Contract with Water Company. — Ordinances.*—A resolution adopted by a city council, not renouncing a contract fixing the maximum rental of water hydrants, but contemplating the further continuance of the contract, providing that thereafter but $10 a year should be paid for each hydrant, did not conclude the water company or affect its rights, where the company made no response to the notice of the adoption of the resolution.    pp. 328–330.

From Lake Circuit Court; *T. E. Howard*, Special Judge.

Action by the Valparaiso City Water Company against the city of Valparaiso to collect water rent. From a judgment for plaintiff, defendant appeals.    *Affirmed.*

*A. D. Bartholomew* and *H. A. Gillett*, for appellant.
*N. L. Agnew*, for appellee.

BLACK, P. J.—The complaint of the appellee against the appellant, a demurrer to which for want of sufficient facts was overruled, showed that the assignors of the appellee in the year 1885 entered into a contract with the appellant by an ordinance then passed by the common council of the city and accepted by the assignors of the appellee, for the construction and maintenance of a system of water-

works in the city of Valparaiso. In the first section of the ordinance, exhibited with the complaint, authority was given to the assignors of the appellee, their successors or assigns, to establish, construct, and maintain a system of water-works in that city, and for such purpose they were authorized to locate and maintain a system of piping in and through the streets, alleys, squares, and public grounds of the city, and to make necessary excavations therefor. In the second section it was provided that the privileges and franchises granted in the first section "shall continue for a period of fifty years, during which term the city shall not grant to any other person, association, or corporation any of the rights, privileges, and franchises in this ordinance granted, nor authorize or permit the establishment or maintenance of a system of water-works in said city by any other person, association, or corporation. Such rights, privileges, and franchises, however, are subject to the conditions hereinafter provided." There were in the ordinance provisions that the system of piping should consist of not less than ten miles of main pipes, and that from time to time, as the common council should by ordinance direct, the assignors of the appellee, their successors or assigns, should lay such other pipes and establish such additional hydrants as the welfare and safety of the city and its inhabitants might require, and that at least one hydrant should be established and maintained for each 500 feet of main pipe so ordered; that they should locate and establish along and upon the main pipes fifty fire-hydrants, described, and the city should pay them as "rental" for the use thereof $80 each year, payable in semiannual instalments, as the use thereof should be afforded to the city, on the first days of January and July of each year. "Additional hydrants," it was provided, "shall be furnished from time to time, as the common council may order, at a rental of not more than $50 each per annum, payable in semiannual instalments as aforesaid. All such additional hydrants shall

be put in in the same manner and distance apart, and be of the same character as the fifty specified in this ordinance."

It was provided in the ordinance that at any time after the expiration of fifteen years from the completion of the water-works, the city should have the right to purchase the same, by giving the owners thereof one year's notice in writing, and that in case of such purchase the city should pay a reasonable value for the same; and a method of ascertaining the value by appraisement was provided for, there being a proviso that nothing should be paid by the city for the unexpired franchise of the owners. It was also provided that at any time, in the event of failure of the grantees, their successors, or assigns to furnish water as required by the ordinance, or to keep the water-works in a reasonably good state of repair, or to comply with the substantial provisions of the ordinance, the common council should have the right to take charge of, repair, and operate the water-works, and to receive and collect the rental and income thereof; but that any surplus remaining from the income of the water-works, including hydrant rental, after deducting the expense of putting in repair and operating the same, should be paid to the grantees, their successors, or assigns. Also, that whenever the water-works should come into the possession of the city under the above provisions, they should be surrendered to the grantees, their successors, or assigns, upon their furnishing the city a reasonable guaranty of their ability and willingness to keep in repair and operate the water-works, and upon reimbursement to the city of any and all money expended by it upon the water-works in excess of the receipts therefrom; provided, that if the water-works should be allowed to remain in the possession and charge of the city for one year, all the rights, privileges, and franchises granted by the ordinance should be forfeited. Also, that the city should from time to time provide by ordinance for the due protection of the water-works, regulate and control the use of fire-hydrants, and

City of Valparaiso *v.* Valparaiso City Water Co.

have general supervision of the waterpipes and fixtures, as far as the health and necessities of the city and its inhabitants might require.

The complaint showed that the system of water-works, with the fifty hydrants aforesaid, was located, established, and constructed prior to January 1, 1886, and the waterworks plant, with all the privileges, franchises, and appurtenances thereto belonging, was thereupon transferred to the appellee, and the appellee became the owner and went into possession thereof, and has continued to own, manage, and operate said plant, and it and its assignors have complied in all respects with all the requirements and covenants on their part of said contract, franchise, ordinance and acceptance. It was alleged that after that date, and after the location of the first fifty hydrants, the common council from time to time, by ordinance, ordered the location and construction of new lines of pipe and additional hyrants, and the appellee in accordance with such directions located and constructed the same; so that there were forty-eight additional hydrants in use by the city, so constructed and located by the appellee, and accepted and used by the appellant, prior to the 1st day of January, 1900; that "the use, occupation, and rental of each of said forty-eight additional hydrants for the half year ending June 30, 1900, was and is reasonably worth the sum of $25 for each of said forty-eight additional hydrants,—in all the sum of $1,200;" that the first of these additional hydrants was located about the year 1890, and the appellant from that time to the 1st of January, 1900, paid the appellee, under said contract, for each of the additional hydrants, in instalments of $25 on the first day of January and of July in each year; that during all the period from the 1st of January to the first of July, 1900, the appellee maintained and continued to maintain and keep in good order and repair and capable of efficient service in the extinguishment of fires, said forty-eight additional hydrants, and also said

fifty hydrants; and the appellant, by reason of the premises and said contract, became and was bound to pay the appellee on the 1st of July, 1900, the sum of $1,200 for the use of said forty-eight additional hydrants from the 1st of January to the 1st of July, 1900.

The complaint showed a demand and refusal of payment for the use or rental of the additional hydrants for the period of six months from January 1st to July 1, 1900, at the rate of $25 for each, and that the amount of the account therefor was due and unpaid.

By way of objections to the complaint it is suggested that the contract provided for a monopoly by granting the exclusive use of the streets and the exclusive right to furnish the city and its inhabitants with water for a period of fifty years upon the conditions expressed in the ordinance; that hence the city exceeded its powers by agreeing to forego and postpone the exercise of legislative and discretionary powers, and therefore the contract is void; also the contract to pay a fixed and determinate sum for hydrant rental for so long a period was against public policy and void.

It may be observed, preliminarily, that as to the additional hydrants, for the use of which the action was brought, there was not a contract to pay a fixed and determinate sum as rental therefor, as stated in the objections so urged by counsel, but the agreement was that these hydrants should be furnished at a rental of not more than a specific sum each per annum. This left opportunity for the parties, consistently with their contract, to agree upon any rental not exceeding such maximum sum; and, in the absence of any agreement specially regulating this rental, the amount which could be recovered by suit, if any, would be the value of the use of these hydrants; that is, a reasonable rental.

It may be premised further that in view of the stipulations of the ordinance above recited, besides the provision that the franchises might be forfeited and the water-works might be taken over by the city for inefficient performance

on .the part of the grantees, the privileges and franchises were not granted absolutely for fifty years, the city reserving the privilege of purchasing the water-works at any time after the expiration of fifteen years from the date of the completion of the water-works by giving the owners one year's notice. It was alleged that the water-works were completed before the 1st of January, 1886, and the period of fifteen years it seems had but a short time to run,—how long is not definitely shown by the complaint,—when the rental sued for accrued.

In *Fergus Falls Water Co.* v. *City of Fergus Falls*, 65 Fed. 586, an action to recover for water supplied to the city under a contract embodied in a city ordinance, which granted an exclusive privilege for thirty years, with a stipulation that at the end of ten years the city might, at its option, buy the water-works at a price commensurate with the productive value thereof, it being claimed by the city that the city council had no authority to bind the city for such period in advance, it was said by the court: "It must not be forgotten that ten years of that time have elapsed; that the contract has but twenty years to run, and is now considerably modified. It is no longer an exclusive one, for the time has been reached when the defendant can purchase the works," etc.

But we think the objections thus urged against the contract are not properly involved in this action, and that the decision of the cause does not require a determination as to the extent of the authority of the city in this exercise of its business powers in the making of a contract for the construction and maintenance of water-works, either with reference to the period of the franchise, or with reference to the exclusiveness of the grant.

No question is made as to the authority of the city to make a contract with the assignors of the appellee for the construction and maintenance by them or their successors or

assigns of a system of water-works for the city, and to provide therein for the payment of rentals by the city for the use of fire-hydrants constructed and maintained under such contract. The furnishing of the use of the hydrants, the promised compensation for which it is here sought to recover, was the performance by the water-works company of a wholly lawful consideration. If, in addition to its promise to pay for such use the reasonable value thereof, the city made other stipulations or promises beyond its authority, which could not be enforced against it because against public policy or unlawful, this would be no sufficient reason for its refusal to perform such lawful promise, based upon a wholly lawful consideration. The particular promise violated by the appellant was the promise to pay the hydrant rental after the use, and the action is to recover the value of the use as promised after the hydrants had been actually provided and used, the stipulated time for payment being past. The promise to pay for this use already enjoyed by the city may be enforced without sustaining any unauthorized or unlawful promise of the city. It can not be supposed that the rental for the use of the additional hydrants was affected as to the amount thereof to the detriment of the city by the provisions of the contract thus questioned.

In *State Board, etc., v. Citizens St. R. Co.,* 47 Ind. 407, 17 Am. Rep. 702, it was held,—the action being upon the contract,—that a corporation will not be heard to urge that the contract was *ultra vires* where the other party to the contract has invested money thereunder and has performed the contract on its part, and the corporation has received the benefit and advantage of the contract. It was there held that the street railway company was not at liberty to assume the position that it had not legal power to make the contracts for the benefits which it had actually received, the contract being a subscription to pay the state board of agriculture a certain amount upon condition that the state fair

should be located and held at a certain place for specified years.

*Driftwood, etc., Turnpike Co.* v. *Board, etc.,* 72 Ind. 226, was an action on a contract of the county board to repair the appellant's turnpike, which was held by the court to be void, the board not having any statutory authority to appropriate money for such a purpose. The case was distinguished by the court from *State Board, etc.,* v. *Citizens St. R. Co., supra,* it being said: "There is a broad difference between a private corporation organized for a private purpose, though subserving a public interest, and a public corporation, like a county or city, organized for public purposes only, and whose obligations must be paid from public funds raised for public purposes only. The latter class of corporations may always defend, on the ground that the supposed contract was outside of the authority conferred on it by law." In that case the county board was sued upon a promise, wholly beyond its authority to make, to pay for repairs of a turnpike, and the case is distinguishable from the one at bar.

Concerning the liability of municipal corporations in actions *ex contractu,* it is said in Dillon, Mun. Corp. (3d ed.), §935: "Upon authorized contracts—that is, upon contracts within the scope of the charter powers of the corporation and duly made by the proper officers or agents—they are liable in the same manner and to the same extent as private corporations or natural persons. But upon a contract which is *ultra vires* in the exact sense of that expression, that is, upon a contract relating to matters wholly outside of the legal powers of the corporation, there is no liability *upon the contract;* and the corporation is not estopped to set up the defense."

In *Hitchcock* v. *Galveston,* 96 U. S. 341, 24 L. Ed. 659, the city, having power to make a valid contract to pave its streets, made such a contract, wherein it agreed to make

payment for the work in certain bonds. It was contended that since no express power was given to issue bonds for such purpose, the whole contract was inoperative and void. The Supreme Court of the United States, per Mr. Justice Strong, said that if the city had no lawful authority to issue the bonds it did not follow that the contract was wholly illegal and void, or that the plaintiff had no right under it. "They are not suing upon the bonds, and it is not necessary to their success that they should assert the validity of those instruments. It is enough for them that the city council have power to enter into a contract for the improvement of the sidewalks; that such a contract was made with them; that under it they have proceeded to furnish materials and do work, as well as to assume liabilities; that the city has received and now enjoys the benefit of what they have done and furnished; that for these things the city promised to pay; and that after having received the benefit of the contract the city has broken it. It matters not that the promise was to pay in a manner not authorized by law. * * * The contract between the parties is in force, so far as it is lawful. * * * Having received benefits at the expense of the other contracting party, it can not object that it was not empowered to perform what it promised in return, in the mode in which it promised to perform. This was directly ruled in *State Board, etc.,* v. *Citizens St. R. Co.,* 47 Ind. 407."

In *Nebraska City* v. *Nebraska City, etc., Co.,* 9 Neb. 339, 2 N. W. 870, an action brought by the gas company against the city to recover the contract price for gas furnished under a contract to the city for a certain month, it having been urged as against any recovery under the contract that it contained certain illegal provisions respecting the exemption of property from taxation, and the payment of money out of the sinking-fund of the city, devoted by law to another purpose, it was said by the court that, admitting that in these particulars the city authorities exceeded their pow-

ers,—which, however, was not decided,—that would be no defense to the action; that under the charter they were authorized to contract for lighting the streets with gas, and to bind the city for the price agreed upon; and that so long as the city voluntarily received gaslight under the provisions of the contract, it could not resist payment of the agreed price simply because of these illegal promises as to the particular fund from which the money should be drawn. "The consideration for which these promises were made being entirely legal, and the price agreed upon being payable, if not otherwise, from its general fund, these objectionable provisions may, if necessary, be rejected, and the rest of the contract permitted to stand; especially where, as here, the city has received the consideration for which the promises were made. Chitty, Contracts, 574. If the company were resisting a tax levied in violation of this agreement, or if they were endeavoring to compel payment of a gas bill out of the sinking-fund, the argument of counsel for the city in this behalf would be entitled to great weight, but under the issues in this case we deem it altogether inapplicable."

In *Argenti* v. *City of San Francisco,* 16 Cal. 255, 264, it was said: "It is well settled in relation to the contracts of corporations, that where the question is one of capacity or authority to contract, arising either on a question of regularity of organization, or of power conferred by the charter, a party who has had the benefit of the contract can not be permitted, in an action founded upon it, to question its validity.  *  *  *  We shall show that this rule applies with equal force to all corporations, whether public or private." This case is cited approvingly in *State Board, etc.,* v. *Citizens St. R. Co., supra.*

In *City of Brenham* v. *Brenham Water Co.,* 67 Tex. 542, 4 S. W. 143, the action was brought to recover the stipulated price for the use of hydrants from June 1, 1885, to January 1, 1886. After construing the contract as in-

tended by the parties to confer on the water company the exclusive right to furnish all the water the city and its inhabitants might need to have furnished through a system of water-works for the full period of twenty-five years, and to be paid therefor, and after holding that the city did not possess power to confer such rights, the court was of the opinion that the contract by its terms precluded the city from the proper exercise from time to time of its legislative power, and that it was unconstitutional because it created a monopoly; and that, therefore, it was invalid.   Yet it was held that if the company furnished water between the time the works were put in operation under the ordinance passed June 1, 1885, and the 10th of July of that year, when the city declined further to regard the contract as binding, for that the city ought to be held liable.

We do not mean to be taken as approving all the opinion of the court in this Texas case, and we refer to it as an instance where a court of high reputation, upon such a contract, approved the recovery of the stipulated price for actual use and benefit under the contract.

*Illinois, etc., Sav. Bank* v. *City of Arkansas City,* 22 C. C. A. 171, 76 Fed. 271, 34 L. R. A. 518, involved the question as to the right to recover of the city rentals for hydrants used, under a contract in which the city assumed to grant the exclusive use of its streets to a private corporation.   It was held, notwithstanding the exclusiveness of the grant, that after the contract had been substantially performed by the grantee, after the water-works had been constructed according to the terms of the contract, and after the city had accepted and used them for years, and had thus secured the substantial benefits of its grant, it could not repudiate all the obligations it had the power to assume, because it assumed one that was beyond its power.   It was further said:   "No one who does not infringe or threaten to infringe the exclusiveness of the grant in a contract made by a municipality can, after the substantial perform-

ance of the contract by the grantee, be heard to say that the contract or grant is void on account of the exclusive character of the latter."

In *Maher* v. *City of Chicago,* 38 Ill. 266, it was said: "If a municipal corporation, in dealing with individuals assumes that it possesses certain corporate powers, upon which the validity of its acts depend, and it turns out that it does not possess the specific powers relied on, it is not thereby excused from the performance of its obligations, if they can be performed through the agency of other powers that it does possess."

In *Dodge* v. *City of Council Bluffs,* 57 Iowa 560, 10 N. W. 886, the court upheld the action of the trial court in sustaining a demurrer to a petition of taxpayers to restrain action pursuant to a contract for the construction of water-works, the accepted ordinance purporting to confer on the American Construction Company exclusive privileges. The court, on page 566, said: "The ordinance purports to grant an exclusive right. Whether it is competent for the city to grant such right we need not determine. If we should conclude that it was not, it is manifest that the ordinance would not be void. It would result merely that the right granted is not exclusive, and the plaintiffs as mere taxpayers can not properly raise that question. Such question can not properly be raised until a conflict arises between the American Construction Company and some person or persons, or corporation, claiming also a right from the defendant city to construct and operate water-works. *Grant* v. *City of Davenport,* 36 Iowa 406." See, also, *Schipper* v. *City of Aurora,* 121 Ind. 154, 6 L. R. A. 318.

It is objected further that the ordinances whereby the common council from time to time directed the laying of new lines of pipes and the providing of the additional hydrants should have been filed as exhibits with the complaint. This objection is not well taken. These ordinances constituted acts done *ex parte* by the city in carrying the

contract into execution by way of giving directions as provided for in the contract. They did not set forth the contract sued upon, and therefore they would not have been proper exhibits.

The court sustained a demurrer to the fifth and sixth paragraphs of answer severally. In the fifth paragraph, pleaded to all of the claim for the forty-eight additional hydrants except the sum of $5 for each of these hydrants, it was alleged that on July 28, 1899, the common council of the city duly enacted an ordinance, or resolution, as follows: "A resolution fixing the rental the city will pay in the future for additional hydrants. Whereas, the Valparaiso City Water Company, under section nine of an ordinance entitled, 'An ordinance authorizing the construction of a system of water-works in the city,' passed and approved by the common council of said city on the 16th day of February, 1885, has from time to time put in additional hydrants to the number of forty-eight above the number provided for in section seven of said ordinance; and whereas, the city has heretofore been paying an annual rental of $50 per hydrant for the use of such additional hydrants without any express contract so to do, which sum is largely in excess of a reasonable rental for the use of such hydrants; and whereas, no exact sum is fixed in said ordinance as the amount of rental the city shall pay, but only a maximum sum, and it is thereby left to be inferred that the said company will furnish, as in law it is its duty to do, the use of said additional hydrants at a reasonable rental; and whereas, $10 per hydrant is a reasonable annual rental for the use of all such hydrants; therefore, be it resolved by the common council of the city of Valparaiso, Indiana, that the city of Valparaiso will pay to the Valparaiso City Water Company from and after January, 1900, in semiannual instalments on the 1st day of January and of July each year, the sum of $10 per hydrant, and no more, as an annual rental for the use of all hydrants fur-

nished at any time by said Valparaiso City Water Company under section nine of such ordinance.   Second.   The city clerk is hereby directed to furnish and deliver at once to said Valparaiso City Water Company a certified copy of this resolution."

It was alleged that the next day after the passage of this resolution, a complete and duly certified copy thereof was served upon and left with the appellee; that after the passage and service of the resolution the appellee made no response thereto, but continued to supply the additional hydrants with water from the 1st of January, 1900, to the 1st of July, 1900,—that being the time for which the appellee is claiming, as theretofore, and without any notice, objection, or protest of any kind.

The sixth paragraph of answer, pleaded also to the claim for the additional hydrants except the sum of $5 for each of them, set forth the above resolution, and alleged service thereof, as in the fifth paragraph, and it was alleged that the rates fixed by the resolution were and are reasonable and fair, and the full worth and value of such rentals, and such as to afford the appellee a full, fair, and reasonable compensation for such service; that the appellee was and is organized as a corporation under and by virtue of §5051 *et seq.* Burns 1901 for and with the declared purpose to supply said city with water; that the rental service claimed for in the complaint accrued and was rendered after January 1, 1900, and after the passage and service of the resolution.

The resolution pleaded in these answers did not renounce the contract, or forbid further performance thereof, whatever would have been the proper effect of such repudiation of the contract,—as to which we do not decide; but, quite to the contrary, the resolution contemplated further and continuous performance of the contract on the part of the water company, and expressly insisted that it was in law the duty of the company to furnish the use of the additional

hydrants at a reasonable rental; and thereupon the city by itself assumed to declare what would be a reasonable rental. Notice to the water company of the adoption of the resolution, without any response from the company, did not change the contract or affect its rights thereunder. It continued to be entitled to a reasonable rental, which the court trying the case sought to determine upon the evidence. The determination of the common council, by the resolution, that $10 was a reasonable rental did not conclude the appellee on that question.

The court trying the cause found the rental value of the additional hydrants to be $30 per annum for each hydrant. Counsel have discussed some objections to testimony of expert witnesses who stated their opinions as to the rental value. We have examined into this matter, and we can not discover that the action of the court was not in agreement with quite familiar rules of evidence often stated in our reported cases.

Judgment affirmed.