DANIEL L. BELL v. EDWARD J. KIRKLAND and Others.[1]

October 4, 1907.

Nos. 15,266, 15,267—(147, 148).

**Municipal Contract—Ultra Vires—Bond.**

A municipal corporation let a contract for the construction of a sewer without complying with charter requirements, and without obtaining the consent of two property owners through whose lands the sewer was to pass or of the federal authorities for its outlet on government land. Plaintiff sued for the balance of an account for materials furnished the contractor on a bond given, inter alia, for the benefit of materialmen. The bondsmen interposed the defense that the contract was void because ultra vires, and that, therefore, they were not responsible on the bond. It is *held:*

1. The tendency of judicial opinion to refuse to avoid contracts made by private corporations because ultra vires does not apply equally to contracts made by municipal corporations; but to both classes of contracts

[1]Reported in 113 N. W. 271.

that doctrine should be so administered as not to defeat the ends of justice or to work a legal wrong.

2. A contract ultra vires in the general and primary sense that it is wholly outside the power of the corporation to make under any circumstances is ordinarily void in toto; but whether a contract strictly within the scope of the corporation's powers, but ultra vires in the restricted or secondary sense that the power has been irregularly exercised, or that it was beyond the power of the corporation "in some particular or through some undisclosed circumstances," is wholly void or not, depends upon the circumstances of the particular case.

3. The contract here in issue was ultra vires in the secondary and restricted sense only.

4. The fact that the city had not procured right of way through all lands of private owners through which it was to pass did not invalidate the contract.

5. The facts that as to a small portion of the contract with the municipality only it was ultra vires in any sense, and that it had been substantially executed by the parties basing rights of action upon it, are strong, if not conclusive, considerations for refusing to hold it absolutely void.

6. Neither the dictates of public policy nor the analogies of the law justify holding this contract void, as between dealers, who furnished material to the contractor in reliance on the bond, and the sureties thereon, who are in a position favored by the law.

7. The recital in the bond of the contract as valid and subsisting prevented the sureties thereon from asserting that it was ultra vires

Action in the district court for Ramsey county to recover $2,967.55 against the principal and sureties upon the bond described in the opinion. The case was tried before Kelly, J., who ordered judgment in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendants Ulmer, Warner, and Wagener severally appealed. Affirmed.

The recital in the bond was in the following words: "Whereas, the above bounden Edward J. Kirkland has entered into a contract with the city of St. Paul to construct a sewer on Somerville avenue from the Mississippi river to Eustis street; thence on Eustis street to Bayard street according to plans and specifications thereto annexed, for the consideration recited therein, which contract has been duly executed by each of the contracting parties, and bears date the 12th day of January, 1904, and is made a part hereof."

*Lightner & Young, B. H. Schriber,* and *Markham & Calmenson,* for appellants.

*O'Brien & Albrecht,* for respondent.

JAGGARD, J.

Plaintiff and respondent brought an action against defendants and appellants to recover the unpaid balance for materials furnished to one Kirkland to be used in the construction of the "Somerville sewer." Kirkland contracted to construct the sewer, and, as principal, signed an instrument in which the appellants joined as sureties, which purported to be a bond to the city of St. Paul conditioned for the performance of the contract, and for the payment for the labor and materials furnished in its execution. The total amount of the account was $6,286.30. The balance unpaid was $2,967.55. The amount of the bond was $59,200. The present is a test case. The court found for the plaintiff. It found as facts, inter alia, that the course of the sewer carried it under property hereinafter more fully set forth as to which the city had acquired no right by condemnation or grant. This appeal was taken from an order denying defendants' motion for a new trial.

Defendants' essential argument is that, if the contract was ultra vires and void, so also was the bond, and that the agreement was shown to have been ultra vires and void.

In the first place, the agreement required the construction of a sewer through property not owned by the city. The sewer provided for in the contract was a main sewer of about forty two hundred feet in length. It is cut into two almost equal parts by a railroad right of way and adjoining private property for two hundred five feet. It is proposed to construct it to the Mississippi river as an outlet. In connection with the latter proposition, it is argued that a sewer is of no value unless continuous, or unless it has an outlet. It cannot reach the river because the last eighty five feet is owned by the United States government. The result was two disjointed pieces of sewer without an outlet. The significant fact is that the ultra vires part of the contract leaves the sewer valueless. A contract to construct a useless sewer in private property is beyond the power of the city. The invalidity appears upon the face of the contract.

In the second place, defendants' argument proceeds, the contract was not entered into in accordance with the mandatory provisions of the city charter. We have examined the record adduced in support of this contention. It may fairly be regarded as showing a failure to let the contract as required by the city charter. It is unnecessary to consider the details of this want of compliance. It was, in fact, made by the board of public works, the proper body. A valid preliminary order, a specification of the portion of its cost to be paid out of general funds and other essentials, may properly be conceded to have been wanting.

1. A proper preliminary consideration of the legal questions thus presented involves a brief reference to the attitude of the courts to the doctrine of ultra vires. That doctrine has been attacked with an earnestness amounting sometimes to asperity. "The doctrine of ultra vires is of very modern date and entirely the creation of the courts. There is no such thing as ultra vires in the case of a common-law corporation (Case of Sutton's Hospital, 10 Coke, 30 C.), and it is not enacted in any statute. It affords, perhaps, the most remarkable instance in the history of English jurisprudence of the making of law by the judges; and, having once been created, it is now probably saddled onto the backs of the courts, like Sinbad's 'Old Man of the Sea', not to be shaken off." 6 Cent. Law. Jour. 3. "The reasoning (on the subject) involves a strange confusion of ideas." 2 Morawetz, Priv. Corp. § 649. Judge Seymour D. Thompson regards the modern doctrine of ultra vires as a revolt against the ancient doctrine based on a species of moral reformation. His conclusion is "that the doctrine of ultra vires has no proper place in the law of private corporations, except in respect of contracts which are bad in themselves, the making of which is prohibited by considerations of public morality, of justice, or of a sound public policy, and which, therefore, stand upon such a footing that neither party can be regarded as innocent or blameless in entering into them." 28 Am. Law Rev. 398. And see 5 Thompson, Corp. § 5969.

In 9 Harv. Law Rev. 255, Mr. George Wharton Pepper combats —and we think successfully—the existence of any clear distinction between the principles of the earlier and of the present decisions or of inextricable confusion on the subject in the American reports. He

recognizes, however, that, "in modern times there has been a steady movement in the direction of enforcing unauthorized and prohibited contracts as between the parties." The tendency to what Mr. Cooke (28 Am. Law Rev. 227) calls "the extinction of the doctrine" is certainly very marked. 11 Harv. Law Rev. 387; 14 Harv. Law Rev. 332; 13 Am. Law Rev. 661. After an exhaustive discussion of relevant authorities in Re Assignment Mut. G. F. Ins. Co. v. Barker, 107 Iowa, 143, 77 N. W. 868, 70 Am. St. 180, Mr. Freeman concludes: "After a study of the cases upon the subject * * * the impression is forced upon us that the doctrine of ultra vires, as applied to the contracts of private corporations, has almost lost its meaning. The undermining of the foundation upon which it has rested from its inception has proceeded simultaneously from different directions until the doctrine itself seems almost ready to fall of its own weight. The original rule that an ultra vires contract was illegal and void could give rise to no rights, nor be validated by any performance or application of the law of estoppel, has practically been erased from the law, for those courts which do not contradict it directly do so indirectly by their manner of applying it. An appeal to the public interest that private corporations should be restricted in the making of contracts to the scope of their granted powers is growing more and more ineffectual where the rights of persons innocently entering into ultra vires contracts with such corporations intervene."

With respect to contracts by municipal corporations, one current opinion is that: The "contracts of corporations, whether public or private, stand on the same footing with contracts of natural persons, and depend on the same circumstances for their validity and effect. The doctrine of ratification and estoppel is as applicable to corporations as to individuals." Argenti v. City of San Francisco, 16 Cal. 256, 257. We incline, however, to accept the views of Judge Dillon on the subject, thus summarized by counsel for the defendants: "The general principle of law is settled beyond controversy that the agents, officers, or even the city council of municipal corporations cannot bind the corporation by any contract which is beyond the scope of its power. * * * The history of the workings of municipal bodies has demonstrated the salutary nature of this proposition, and it is the part of true wisdom to keep the corporate wings clipped down to the law-

ful standard. It results from this doctrine that contracts not authorized by the charter or by other legislative act, that is, not within the scope of the powers of the corporation under any circumstances—are void." Dillon, Mun. Corp. (4th Ed.) § 457 (381). And see Mayor v. Ray, 19 Wall. 468, 22 L. Ed. 164; Newbery v. Fox, 37 Minn. 141, 33 N. W. 333, 5 Am. St. 830. There is, however, an unmistakable and proper tendency to apply to both classes of corporations the principle that "the doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong." Ohio R. Co. v. McCarthy, 96 U. S. 258, 24 L. Ed. 693.

2. It is to be kept in mind that the term "ultra vires" is used in many different senses. 8 Words & Phrases, 7145, 7146. Two different uses of the term were pointed out in Minnesota Thresher Mnfg. Co. v. Langdon, 44 Minn. 37, 46 N. W. 310, three in Bissell v. Michigan, 22 N. Y. 258, and four in Green, Brice's Ultra Vires, 33–35. For present purposes, it suffices to refer especially to two different meanings.

The first of these describes a contract which is not within the scope of the powers of a corporation to make under any circumstances, or for any purposes; for example: "Where a corporation authorized only to build a railroad engages in banking." Mitchell, J., in Minnesota Thresher Mnfg. Co. v. Langdon, 44 Minn. 41, 46 N. W. 312. Where "the legislature, for instance, having authorized you to make a railway, you cannot go and make a harbour." Kindersley, V. C., in Earl of Shrewsbury v. North Staffordshire, 35 L. J. Ch. 156, 172. So, in the cases to which defendant refers us, it was held to be wholly outside of a city's power to "surrender control over streets" (State v. Minnesota Transfer Ry. Co., 80 Minn. 108, 83 N. W. 32, 50 L. R. A. 656); to pay money to aid in building a shoe factory within its limits (City of Chaska v. Hedman, 53 Minn. 525, 55 N. W. 737); to aid in the construction of a dam for the purpose of improving a private water power (Coates v. Campbell, 37 Minn. 498, 35 N. W. 366); to construct a building for the use of another municipality or other third person (Borough of Henderson v. County of Sibley, 28 Minn. 515, 11 N. W. 91; Village of Glencoe v. County of McLeod, 40 Minn. 44, 41 N. W. 239); or without authority to buy real estate (Ba-

zille v. Board of Commrs. of Ramsey County, 71 Minn. 198, 73 N. W. 845). For further illustrations, see Ingersoll, Pub. Corp. 292, 293. The second of these meanings refers to contracts of a class which the corporation had a right to execute, but with respect to which there has been some irregularity or defect in the actual exercise of the power "in some particular or through some undisclosed circumstance" affecting the individual contract in issue.

The former class is ultra vires in the primary, and really only proper use of the term, while in the second it is merely secondary. Mitchell, J., in Minnesota Thresher Mnfg. Co. v. Langdon, supra. That is to say, an ultra vires municipal contract, in its true sense, is a contract relating to matters wholly outside the charter powers of a corporation. 2 Dillon, Mun. Corp. §§ 935, 936. In Miners v. Zellerbach, 37 Cal. 543, 578, 99 Am. Dec. 300, Sawyer, C. J., justly remarked: "These distinctions must be constantly borne in mind in considering a question arising out of dealings with a corporation. When an act is ultra vires in the first sense mentioned, it is generally, if not always, void in toto, and the corporation may avail itself of the plea. But, when it is ultra vires in the second sense, the right of the corporation to avail itself of the plea will depend upon the circumstances of the case." And see City of Valparaiso v. Valparaiso, 30 Ind. App. 316, 65 N. E. 1063; Rogers v. City of Omaha (Neb.) 107 N. W. 214; 5 Thompson, Corp. §§ 5975, 5976, 5977; 2 Dillon, Mun. Corp. § 936; 2 Current Law, 977.

3. The inquiry naturally arises as to the sense in which the present contract is ultra vires. In the first place, it is ultra vires in the secondary and restricted sense only. The city had the undoubted charter power to contract for the construction of a sewer. So to do was strictly within the object of the creation of the corporation. That was a familiar and necessary part of its function in government. The contract was not of the class of contracts which are void for want of legal capacity on the part of the city to make them. On the contrary, it was such a one as the city could properly have made although it may be admitted that this particular contract it ought not to have made. It is not at all such a contract as is prohibited by statute or public morals, any more than by its subject-matter. If the officers executing it had been regularly authorized, and if consent of the

owners of all premises through which it was to run had been obtained, it would unquestionably have been a valid contract.

In the second place, the present contract is ultra vires, if at all, as to a small part only. It is convenient to postpone the consideration of irregularities in the letting of the contract, and to here refer only to the failure of the city to condemn. So far as that failure is addressed to private property, which the city could have condemned, the controversy is disposed of by the ruling in Keough v. City of St. Paul, 66 Minn. 114, 68 N. W. 843. It was there held that the contract for grading a street is not ultra vires, because the council has omitted to establish gradient lines, nor because condemnation proceedings have not been consummated. In the last analysis, however, defendants rely on the fact that the outlet of the sewer, to the extent of eighty five feet, was owned by the government, and that the contract was beyond the power of the city, because it involved the commission of a trespass. In this connection we are cited to Sang v. Duluth City, 58 Minn. 81, 59 N. W. 878. It was there held that a contractor could not recover loss of profits because the city had not acquired the right of way across the property of a railway company for a street which he undertook to grade, pave, and otherwise improve. As to such a part of the contract, it was held to be ultra vires. It was said in that case: "Plaintiff does not claim to recover for any work so performed, but claims loss of profits for being prevented from performing on the railroad right of way and loss by depreciation of material purchased for that part of the work." That case is obviously not at all inconsistent with authorities holding that "an entire contract is not invalid because part thereof is ultra vires. * * *" A court should not destroy a contract made by parties further than some good reason requires. Elliott, Mun. Corp. § 291. And see Illinois T. & S. Bank v. City of Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518; Spier v. City, 138 Mich. 652, 101 N. W. 846, 2 Current Law, 977, notes 82, 83. The decision most nearly similar to the case at bar in this connection which we have been able to find is Coit v. City of Grand Rapids, 115 Mich. 493, 73 N. W. 811. This is the rule. That a contract void as to an inconsiderable or insignificant part is as to the rest valid is only one of its applications.

In the third place, the features of this contract objected to remain

ultra vires in this restricted sense and to this limited extent, only so far as is possible with respect to an executed contract. The learned trial judge in his memorandum said: "The city paid large sums of money upon this contract to the defendant Kirkland as the work progressed. One of these sureties received one of these payments. Neither of Kirkland's sureties can lawfully plead that the contract between the city and Kirkland is ultra vires because so far as either of them is interested, and so far as concerns this cause, the contract has been fully performed. Where an ultra vires contract has been fully performed by both parties, it is justly held that it is no longer assailable by either. Note, In re Mutual Ins. Co., 70 Am. St. 166." And see 2 Morawetz, Priv. Corp. § 689; Hunt v. Hauser Malting Co., 90 Minn. 282, 96 N. W. 85, collecting cases at 285. The learned trial judge proceeds: "The above treats of contracts with private corporations, but it is applicable in this case where the rights of the municipal corporation are not involved."

In the leading case of Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659, Mr. Justice Strong approves of the following rule laid down in State Board v. Street Railway Co., 47 Ind. 407, 17 Am. 702, in an action against a municipal corporation: "Although there may be a defect of power in a corporation to make a contract, yet, if a contract made by it is not in violation of its charter or of any statute prohibiting it, and the corporation has by its promise induced a party relying on the promise and in execution of the contract to expend money and perform his part thereof, the corporation is liable on the contract." This was followed and approved in City of East St. Louis v. East St. Louis, 98 Ill. 415, 38 Am. 97. In Argenti v. City of San Francisco, 16 Cal. 256, after elaborate examination of the authorities, recovery on an executed contract with the city was allowed, although there was no evidence that the officer who signed them was expressly authorized. To the same effect are Rogers v. City of Omaha (Neb.) 107 N. W. 214; Bodewig v. City of Port Huron, 141 Mich. 564, 104 N. W. 769; Lines v. Village of Otego, 91 N. Y. Supp. 785; Wilkins v. Mayor, 9 Misc. 610, 30 N. Y. Supp. 424; City of Tyler v. Jester, 97 Tex. 344, 78 S. W. 1058; City v. Valparaiso, 30 Ind. App. 316, 65 N. E. 1063 (a particularly well-considered case); City of Fergus

Falls v. Fergus Falls Hotel Co., 80 Minn. 165, 83 N. W. 54, 50 L. R. A. 170, 81 Am. St. 249.

We have referred to these considerations to make plain the restricted sense and extent of the ultra vires aspect of this contract and its executed character, as well as the trend of judicial position concerning the legal position of plaintiff's contract. The facts that as to a small portion of a contract with a municipality only it was ultra vires in any sense, and that it has been substantially executed by the parties basing rights of action upon it, are strong, if not conclusive, considerations for refusing to hold it absolutely void. It is, however, unnecessary, and because of the course the argument has taken in this court, undesirable, to determine whether the contract was valid in the sense that the contractor could have recovered on it from the city.

4. This is a suit against the bondsmen by a materialman. The final and real question which must be considered in the light of these considerations concerns the effect on these materialmen of the doctrine of ultra vires.

In a suit against the bondsmen of the contractor, it is difficult to discover what considerations of public policy would tend to favor the forfeiture of this plaintiff's right. Without controversy, "all persons contracting with a municipal corporation must, at their peril, inquire into the power of the corporation or its officers to make the contract." State v. Minn. Transfer Ry. Co., 80 Minn. 108, 117, 83 N. W. 32, 50 L. R. A. 656; Bazille v. Board of Commrs. of Ramsey County, 71 Minn. 198, 73 N. W. 845; Newbery v. Fox, 37 Minn. 141, 33 N. W. 333, 5 Am. St. 830; Mitchell v. Board of Commrs. of St. Louis County, 24 Minn. 459. It might accordingly be reasonable to hold that a materialman dealing with a public contractor is bound to see that the contract with the city is of a class within the scope of municipal powers. But defendants' reasoning on this point, carried to its logical conclusion, would have imposed on the materialman, before he extended credit on the strength of the contract and bond, the necessity of not only passing on the validity of the action of the council, but also of determining through what premises the sewer was to pass, according to the survey, and their correct de-

scription.  He would then have been compelled to ascertain the legality of the city's rights to any streets, to any land condemned by it, or of any title acquired from property owners, and thereunto to examine and to have access to the records of the city officials, and probably to obtain and examine the abstracts of title to the various tracts involved.  It would, in effect, require the city to have completed all details affecting a sewer before a valid contract could be made.  This is not the law.  Keough v. City of St. Paul, supra.  In effect the rule for which defendants contend would tend to deprive the contractor of credit and involve serious delays and embarrassments, to legislate a new clause into the charter, and repeal the present express provisions as to the contract and the bond which are expressly designed to enable the contractor to secure labor and materials upon the credit of the contract and bond.  By what authority or reasoning is one selling material to a municipal contractor made the curator of public interests, and required to do independently the work of the counsel for the city as to correctness of titles, or of the engineer as to the feasibility of the construction of a sewer or its utility when constructed?  What considerations remove him from the protection of the presumption of performance of official duty by which persons dealing on the faith of instruments ordinarily have the right to rely?

There is good authority to the effect that where the act of a corporation is done with power to do it, but without the formality prescribed for the execution of the power, persons dealing with the company are not bound to do more than to ascertain that the power to do the proposed act exists.  5 Thompson, Corp. 5978;  2 Morawetz, Priv. Corp. §§ 678, 686.  Allen, J., in Moore v. Mayor, 73 N. Y. 238, 245, 247, 29 Am. 134, said:  "Persons dealing with corporations in respect to a matter within the general scope of the powers of the city government need not go behind the doings of the common council, apparently regular, to inquire after preliminary or extrinsic irregularities.  * * *  It is indispensable to any government, state or municipal, that full faith and credit be given to the acts of the governing body, and that individuals having occasion to deal with agents of the government should be permitted to regard the acts of the government valid in the absence of any apparent defect, either in the power or the manner of its exercise.  If the act is not within the general pow-

ers of the municipality or its governing body, the case would be different, for every one dealing with the agents of the municipality is bound to know the limits of that power. It is not allowable, however, for a municipal corporation to perpetrate a fraud upon those contracting with it upon the faith of its laws and ordinances, apparently valid and represented as such, by repudiating them upon the allegation of some technical and formal irregularity in their adoption, an omission of some collateral act, some formality prescribed by statute, not of the substance of the power or jurisdictional in its character." That leading case and this doctrine were approved by this court in Bradley v. Village of West Duluth, 45 Minn. 4, 47 N. W. 166. And see Brownell v. Town, 114 N. Y. 518, 22 N. E. 24, 4 L. R. A. 685; Railway Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693; Miners v. Zellerbach, 37 Cal. 543, 578, 587, 99 Am. Dec. 300; Green, Brice's Ultra Vires, 37, and note a, p. 506; 5 Thompson, Corp. § 5967.

The policy of the law—and apparently the law itself—oppose the adoption of defendants' views. Nor does the admitted principle that the defendants, as sureties, are entitled to the strict construction of the facts giving rise to an action against them, and are generally favored in the law, affect the doctrine of ultra vires. As a matter of abstract justice, the sureties to whom a consideration of legal sufficiency has moved, although it does not appear that substantial benefits have accrued to them, have held themselves out as responsible for the validity of the contract to persons having the right to rely upon the security that bond is expressly designed to afford. Moreover, "Volente non fit injuria." Red Wing Sewer Pipe Co. v. Donnelly, supra, page 192, 113 N. W. 1. The contractor could not assert the plea of ultra vires against the city to escape liability on the contract or to retain benefits received under it. By parity of reasoning, the sureties are in no position to raise the same defense as against this materialman. See City of St. Louis v. Davidson, 102 Mo. 149, 14 S. W. 825, 22 Am. St. 764; City of Fergus Falls v. Fergus Falls Hotel Co., supra; Baker v. Northwestern Guaranty Loan Co., 36 Minn. 185, 30 N. W. 464; National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; 10 Cyc. 1166; 5 Thompson, Corp. § 6030. This reasoning is in exact accord with the rule founded upon estoppel, and frequently applied to defeat the plea of ultra vires which denies to a party benefited by a con-

tract the right to question its validity. Brown, J., in City of Buffalo v. Balcom, 134 N. Y. 532, 32 N. E. 7. And see Boehmer v. County, 46 Pa. St. 452; Supervisors v. Bates, 17 N. Y. 242; Mississippi v. Jackson, 51 Mo. 23; McLean v. State, 55 Tenn. 22, 255; Mayor v. Merritt, 27 La. An. 568.

6. The defendants executed a bond which recited the contract as being valid and subsisting. They are bound by that recital. It is elementary that the guaranty of the payment of an obligation imports an agreement or undertaking that its makers were competent to contract in the manner they have, and that the instrument is a binding obligation upon the makers. Mason, J., in Remsen v. Graves, 41 N. Y. 471, 475. And see Walden v. Birch, 55 Hun, 606, 7 N. Y. Supp. 934; 20 Cyc. 1422. Counsel for defendants, however, argue that to such a public bond as this the principles of estoppel do not apply. The authorities are to the contrary. It was held by this court in Red Wing Sewer Pipe Co. v. Donnelly, supra, that the recital in a public bond controls the date of the contract. The general rule is: "A surety on a bond issued or taken by a municipal corporation cannot make the defense of ultra vires or total lack of power on the part of the corporation, or that it transcended its municipal powers. He is estopped from defending on the ground that in letting a municipal contract legal formalities have not been complied with." 27 Am. & Eng. Enc. (2d Ed.) 467. The authorities there cited in support of this proposition we have examined, and found that they substantially sustain it. And see Stearns, Sur. p. 256; Pingrey, Sur. §§ 59–61; 1 Brandt, Sur. § 54.

The most nearly specific authority which has been called to our attention, or which we have been able to find, is City v. American, 118 Wis. 480, 511, 95 N. W. 1097, 1108. The court, per Winslow, J., there said: "Taxpayers whose money is about to be spent, or property owners whose land is about to be charged, may challenge the legality of municipal acts and contracts calling for such expenditures on the ground that the proper legal steps have not been taken, but persons who enter into a contract with the city stand in a different position. Such a person cannot even make the defense of ultra vires or total lack of power on the part of the corporation to make the contract. Security Nat. Bank v. St. Croix Power Co., 117 Wis. 211, 94

N. W. 74. If the defense of ultra vires cannot be made, it is very evident that the lesser claim of failure to execute a given power in the statutory way must also be ineffective. By the express terms of the bond, the surety company has made the contract a part of the bond. They have contracted with the city, and cannot now be heard to say that the city had no power to enter into the contract or did not make the contract in the required manner."

Our attention has, however, been directed to Conant v. Newton, 126 Mass. 105. There sureties on a probate bond were held not estopped to assert its invalidity because the trustee had been appointed orally. A number of questions as to acts ultra vires of a municipal corporation were involved. The case is properly regarded as one of a group in which a surety has been held not estopped by a recital due to fraud or mutual mistake, without any fraud or negligence on his part. Blaney v. Rogers, 174 Mass. 280, 54 N. E. 561. No equitable relief was sought in the case at bar because of any mutual mistake or fraud. The allied cases will be found collected in 1 Brandt, Sur. § 57. Cf. section 56. We have examined all of these cases in detail. Some of them tend to confirm the conclusion here reached; some of them are inconsistent with it and with the general trend of authority. See 40 Cent. Dig. Principal & Surety, § 91½. Undoubtedly there are cases, and lines of cases, more or less out of harmony with the conclusion here reached, and others in addition to those here referred to tending to support it.

7. In view of the clear tendency of the courts to avoid injustice from the application of the doctrine of ultra vires, of the restricted sense in which in any aspect this contract may be regarded as of that character, of the absence of reason for destroying the contract because only part was not directly within the power of the city, of the extent to which it has been executed, and of the peculiar position of the bondsmen defending against a materialman who in good faith sold material for the benefit of the contractor, in reliance on a bond on which he had a right to rely, and which recited the contract as valid and subsisting, we are clearly of the opinion that the conclusion of the trial court on this point was correct.

Incidentally defendants have argued that, when plaintiff furnished the material for the construction of the sewer, it is not shown where

the material was used. There is no merit to the contention. See Red Wing Sewer Pipe Co. v. Donnelly, supra.

Order affirmed.

ELLIOTT, J. (concurring).

The sureties cannot be heard to assert that this contract is ultra vires. A municipal corporation with charter power to construct sewers irregularly entered into a contract for the construction of a particular sewer which was to extend in part through land over which the corporation had acquired no right by grant or condemnation. The contractor executed a bond with the required sureties, conditioned upon the faithful performance of the contract with the city and the payment of the lawful claims for labor and materal used in the work. This bond recited that the principal had entered into a contract with the city, and that the contract had been duly executed by each of the contracting parties. By executing this bond the sureties acknowledged that the contract was valid and the bond authorized. I think it is settled that a guaranty of payment of an obligation or the performance of an undertaking imports an agreement that the instrument is valid and the undertaking legal.

If the sureties on the bond can defeat the claims of laborers and materialmen, because of irregularities in the making of the contract referred to in the bond, it follows that every man who contemplates selling a foot of pipe to a contractor, and every laborer, before commencing work with his shovel, must employ counsel learned in the law to ascertain whether the corporation counsel has properly performed his duties and verify the formal statement of the sureties that a contract exists between the city and the contractor.

This burden rests upon the sureties, and they are bound by the recitals in the bond. I would place the decision upon this ground.